Filed 5/30/13  P. v. Delisi CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ARAN MICHAEL DELISI,<br><br>        Defendant and Appellant. | A135132<br><br>(Sonoma County<br>Super. Ct. No. SCR598371) |

Aran Michael Delisi was convicted by the court of two counts of criminal threats (Pen. Code, § 422) and one count of vandalism (Pen. Code, § 594, subd. (a)).  Imposition of sentence was suspended and he was granted probation, conditioned on service of one year in county jail and completion of a 52-week batterer program.  He contends that the judgment must be reversed because his did not effectively waive his rights to counsel and to a jury trial.  We disagree and affirm.

## I.  DISCUSSION

Because Delisi's claims of error concern only whether his waivers of the right to counsel and trial by jury were valid, we will not discuss the facts of his crimes.  Instead, we will provide much of the context for the issues he raises by quoting at length from the trial court proceedings concerning his decisions to represent himself, and to proceed with a trial before the court.

1

## A. Waiver of Counsel

### (1) *Pretrial Proceedings*

Criminal complaints were filed against Delisi on March 28, 2011. On March 29, the court referred the case for a mental health evaluation to Dr. Ranish. On March 30, the court held an unreported conference with counsel and Dr. Ranish. The case was continued to April 20.

On April 20, criminal proceedings were suspended and Dr. Doty was appointed to report on whether Delisi was mentally competent. (Pen. Code, § 1368.) On April 25, the order directing a report was vacated and the case was continued to May 18. At the May 18 hearing, the court asked the public defender: "And this was the matter where we had originally referred it to Dr. Doty, but then based on your interaction with Mr. Delisi, I think we vacated that; is that correct?" Defense counsel answered, "That is correct."

At a hearing on September 16, the public defender declared a conflict and new defense counsel was appointed. Delisi inquired about possibly representing himself, and the court talked him out of doing so. The hearing transcript reads:

"[Public Defender]: I'm in a position where my office has to declare a conflict in the representation of Mr. Delisi. And I do need to have a lawyer come in to assist him, unless he's interested in proceeding on his own, but I think he—at this point he probably would best be served by having a conflict lawyer appointed.

"The Court: So, sir, certainly you are entitled to have an attorney represent you, whether you can afford one or not. I'm not in a position to question what the conflict is, that's not the Court's business at this point, but—so you always have the right to an attorney. I can appoint another one if you choose to be represented, and certainly that would always be the best advice, especially in a felony matter that you have a professional advocate, a lawyer representing you like [the public defender] had been. So do you wish that I appoint another attorney?

"The Defendant: Um, would you allow me to represent myself?

"The Court: Well, I'm going to have you fill out a form and do further inquiry. Certainly it is never a good thing to represent yourself, even if you were a lawyer.

"The Defendant: Can I have legal appointed help?

"The Court: No, sir. You either have an attorney representing you or you don't. I can't just assign counsel to assist you.

"The Defendant: Okay.

"The Court: If you really are seriously contemplating that, I'll need you to read through the form very carefully, but again I would strongly discourage you, these are very serious offenses.

"[¶] . . . [¶]

"The Court: . . . [¶] But do you have any legal training? Do you have a law degree?

"The Defendant: Not much, but I feel like to get the facts out it might be better to represent myself.

"The Court: I'm going to pass this for a moment. [¶] If we could have the bailiff—

"The Bailiff: I have it here, your honor.

"The Court: Thank you. Sir, I want you to carefully review that form, fill it out and on the record I'll go over it with you. You have an absolute right to represent yourself, it just would be the worst thing that you could do. I'm being blunt with you. It is almost never the case someone would do a better job for themselves, even if you were a lawyer, it just is not a good thing. So I'll pass this. Go through the form and then I'll ask you again whether or not you want to self represent.

"[Public Defender]: And just as a caution to Mr. Delisi, because, as an officer of the court, he should know that even if he represents himself there are certain restrictions on contacting the alleged victims in this matter. There is a criminal protective order, there is [*sic*] some very difficult issues. And even if he has a conflict lawyer, those orders still stay in place. I want the Court to make sure he understands that.

3

"The Court:  Thank you, and thanks for bringing that to my attention.  That puts a huge impediment in your ability to represent yourself, because you won't be able to talk to potential witnesses in the case, which your attorney or investigator would be.

"The Defendant:  Well, after what you said I feel like I should have an attorney appointed.

"The Court:  Good.  That's a good decision. . . . "

The court appointed new counsel, and asked Delisi whether he was presently working.  Delisi said that he was on disability and not working.

The pretrial conference was held on November 18, and the court granted Delisi's request to represent himself.  Delisi filled out a form that stated he had two years of college education, and acknowledged various disadvantages of self-representation, including the inability "to receive the good advice of an experienced criminal lawyer," and the "well known [fact] that is almost always not wise to act as your own lawyer."  When Delisi was given the form, he had the following colloquy with the court:

"The Court:  Please read through the form very carefully.  It is never a good idea to represent yourself, even if you have formal legal training.

"The Defendant:  Okay.  I'm going to study very well and—

"The Court:  Well, so I'm just—I want to start with the record that I'm really—I want you to think very hard about it.  You have a right to represent yourself, but it's never a good idea—

"The Defendant:  I understand.

"The Court:  —to go up against a trial lawyer.

"The Defendant:  After speaking with my attorney, I think it's a mutual agreement.

"The Court:  Go ahead and take your time, fill out that form.  But don't just, you know, fill it out.  Make sure you really read and think about it because it's not a good idea to represent yourself.

"The Defendant:  Okay.  Thank you."

4

When Delisi returned the completed form to the court, the following discussion ensued:

"The Court: . . . One of the things you had said, at least I thought I had heard you say, that there was kind of mutual agreement that you'd represent yourself with opposing counsel?  Did you say something like that?

"The Defendant:  Maybe 'agreement' wouldn't be the right word, but we spoke, and I just didn't feel like the—my current counsel had much interest in the case.

"The Court:  Okay.  Let me make sure I'm clear, though.  You spoke with [defense counsel] or you spoke with [the prosecutor]?

"The Defendant:  [Defense counsel.]

"The Court:  Oh.  I was misunderstanding. [¶] [Defense counsel], did you know about this request to represent himself?

"[Defense Counsel]:  What I knew at the last time in court when we were out in the hallway he said, 'You're fired,' and got up and walked away.

"The Defendant:  I didn't get up and walk away.

"[¶]  . . . [¶]

"The Court: . . . [¶] Would this benefit from a Marsden hearing, or do you think it's beyond that?  I mean, he's filled out the form. [¶] Okay.  So let me just go through it with you, sir.  [¶] Do you—what level of education do you have?

"The Defendant:  Two-year college.

"The Court:  And have you ever represented yourself before in a criminal matter?

"The Defendant:  No, not yet.  First time.

"The Court:  Okay.  And you understand that, as I state, you have an absolute right under the Constitution to represent yourself.  But, you know, I can't help you.  There are rules of evidence.  There are criminal procedures—

"The Defendant:  I understand.

"The Court:  —and this—the system functions with advocates on each side, from the defense and the prosecutor's side.  There's an imbalance there, which there would be

5

because you have a trained and very experienced prosecutor on the other side—she's not even a new attorney.  She's been doing this for many years and—

"The Defendant:  I have all the facts inside of me.

[¶] . . . [¶]

"The Court:  —and I have to follow—

"The Defendant:  Yeah, I don't need help.

"The Court:  You need to please stop interrupting me. [¶] I need to enforce the Evidence Code . . . on rulings.  Do you even know what objections you can make in a trial?

"The Defendant:  Yes.  Relevance is one of the main ones.

"The Court:  So you understand I can't help you?  I can't lean over backwards, if you will, to assist you.

"The Defendant:  Right.

"The Court:  I have to make rulings as if you were a trained and schooled lawyer handling your case.

"The Defendant:  Right.  I understand.  I think I can do a better job than the public defender.

"The Court:  Okay.  Well, you—again, you have an extremely experienced conflicts attorney.  She's not from the public defender's office.  Someone who—

"The Defendant:  Far as I can see, their—

"The Court:  —at least has—

"The Defendant:  —witnesses are completely incredible.

"The Court:  Is there any issue with 1368 that —has counsel had enough time with your client to—

"[Defense Counsel]:  I believe that has been done in the past, from what I can tell. I mean, I certainly have questions.  And certainly what [the prosecutor] gave me the last time gives me pause as to everybody involved in this, as far as—

"The Court:  You mean as far as witnesses as well?

"[Defense Counsel]:  Yes.

6

"The Defendant: I know all the witnesses personally, and I know all their lies, which she does not know.

"The Court: Okay. But nevertheless, your personal knowledge may not get that evidence before the court, and it takes a skilled litigator to get evidence before the court—

"The Defendant: I'll keep talking until it gets out.

"The Court: Sir, you have to stop interrupting me. [¶] Have you issued subpoenas in this case?

"The Defendant: No. I'm just going to cross-examine the witnesses that they have.

"The Court: I'm sorry. You'd do what?

"The Defendant: I think that will be to cross-examine their witnesses. Because they're liars.

"The Court: So let me ask counsel: Is there something new and different in the area of 1368 that you would raise?

"[Defense Counsel]: No, this—from what I can tell from the record, when Mr. Delisi first came into the case, the court asked that Dr. Ranish speak with him, and that may be as far as it got. I really don't recall actual 1368 proceedings were done. As I say, based on what I was handed, I said to [the prosecutor] there might be a valid NGI plea.

"The Court: Okay. Sir, are you presently under medical care or psychiatric care?

"The Defendant: No.

"The Court: Do you believe you appreciate the charges you're facing?

"The Defendant: Appreciate them?

"The Court: Do you know what they are?

"The Defendant: Yeah.

"The Court: What are the charges?

"The Defendant: Two 422 counts.

"The Court: Can you describe what a 422 count is?

7

"The Defendant:  First one is a terrorist threat.  The other one, I believe, is a threat with a weapon.

"The Court:  And do you understand the role of the prosecutor and the judge in the case.

"The Defendant:  Of course.

"The Court:  Okay.  You don't have any question that you understand the proceedings?

"The Defendant:  I don't have any question that I'm not going to win.

"The Court:  You're certainly very articulate and convinced of your ability to represent yourself. [¶] Is there anything I can say or do to—

"The Defendant:  No.

"The Court:  —dissuade you from this?

"The Defendant:  I feel like this is the way to go.

"The Court:  All right.  I'll grant your request."

(2) *Trial*

The case was called for trial on December 9 before a different judge, who again confirmed with Delisi that he wanted to represent himself:  "The Court:  Now, you understand that you have a right to an attorney? [¶] Mr. Delisi:  Right.  Yes. [¶] The Court:  Okay.  And if you cannot afford an attorney one will be appointed for you. [¶] Do you understand that? [¶] Mr. Delisi:  Yes. [¶] The Court:  Okay.  And you understand the charges that are pending against you; correct? [¶] Mr. Delisi:  Yes. [¶] The Court:  You understand that you face a potential commitment to state prison if you're convicted of the respective charges? [¶] Mr. Delisi:  Yes. [¶] The Court:  Okay.  Now, with all of that in mind, do you still want to represent yourself? [¶] Mr. Delisi:  Yes. [¶] The Court:  And you feel capable of doing that? [¶] Mr. Delisi:  Yes.  I don't agree with the charges, but I don't know what to do about that. [¶] The Court:  Okay.  Well, you understand you're going to be facing an experienced District Attorney; right? [¶] Mr. Delisi:  Right. [¶] The Court:  Okay.  Do you have any questions for me before we continue on with this matter? [¶] Mr. Delisi:  No."

8

When he began his opening statement, Delisi noted, "I'm being charged with two felony strike counts, as you know, which in the State of California is [*sic*] serious matters." During cross-examination of victim Jane Doe, Delisi asked her "if you thought maybe I had a mental condition which was causing me to act out?" Doe responded, "Well, there's all kinds of possibilities, whether it be drug use or mental or emotional condition. I'm not—I can't really speak to that." When Delisi asked what kinds of drugs he took, Doe said, "You use marijuana and you were on a medication for your heart and you were on Ativan, very high doses of Ativan." When Delisi attempted to ask Doe whether she knew he was mentally ill and disabled, the court sustained hearsay and relevance objections.

(3) *Sentencing*

The probation report indicated that Delisi had been unemployed since 2005 "based upon various mental health issues . . . ." He had "reportedly been diagnosed with "Obsessive Compulsive Disorder, and Anxiety and Panic Disorders, which prevent him from working. He is currently prescribed Paxil; however, prior to his arrest was taking Xanax for 'a few years.' "

At the sentencing hearing, the court again confirmed that Delisi wanted to continue representing himself: "The Court: . . . [T]he question I have for you is would you like to have an attorney represent you during sentencing? [¶] The Defendant: No, sir. No, your honor. [¶] The Court: Okay. Do you want to continue to represent yourself? [¶] The Defendant: Yes. [¶] The Court: Okay. You understand that you have a right to have an attorney represent you and if you cannot afford an attorney, one would be appointed for you? [¶] The Defendant: Yes. [¶] The Court: Okay. Now, keeping those rights in mind, is it your wish to go ahead and represent yourself? [¶] The Defendant: Yes. [¶] . . . [¶] The Court: Okay. And you feel capable of representing yourself? [¶] The Defendant: Yes. [¶] The Court: Are you under any medication at this point in time? [¶] The Defendant: Just antidepressant. [¶] The Court: Okay. Do you think that has an affect on your conscious state? [¶] The Defendant: No. [¶] The Court: Do you

9

think it has an affect on your ability to reason or understand what the court's saying? [¶] The Defendant:  No."

**B. Review**

A criminal defendant may waive the right to counsel if the waiver is timely, unequivocal, knowing, intelligent, voluntary, and competent. (*Faretta v. California* (1975) 422 U.S. 806, 835; *People v. Stanley* (2006) 39 Cal.4th 913, 931-932; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 545 (*Sullivan*).) Delisi contends that his waiver was neither knowing, intelligent, voluntary, nor competent. He also claims that the court misunderstood the extent to which allowing Delisi to represent himself was subject to the court's discretion in the matter.

(1) *Whether the Waiver was Knowing and Intelligent*

" 'A defendant seeking to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" [Citation.] "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation." [Citation.] Rather, "the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." [Citations.]' " (*People v. Burgener* (2009) 46 Cal.4th 231, 241.) "Most courts, including our own, . . . review the entire record—including proceedings after the purported invocation of the right of self-representation—and determine de novo whether the defendant's invocation was knowing . . . ." (*People v. Marshall* (1997) 15 Cal.4th 1, 24.) The record as a whole may show that waiver of the right to counsel was knowing and intelligent "[e]ven when the trial court has failed to conduct a full and complete inquiry regarding a defendant's assertion of the right of self-representation." (*Ibid.*) " '*The burden is on the defendant* to demonstrate he did not knowingly and intelligently waive his right to counsel.' " (*Sullivan*, *supra*, 151 Cal.App.4th at p. 547.)

Delisi has not carried his burden. He argues that his waiver of counsel was not knowing and intelligent because he was not advised of the penal consequences if he were convicted when he first waived his right at the November 18 hearing. There is a split of

11

authority on the necessity for such an advisement. (Compare *Sullivan*, *supra*, 151 Cal.App.4th at p. 545, quoting *U.S. v. Erskine* (9th Cir. 2004) 355 F.3d 1161, 1167 [court must insure that defendant understands the "possible penalties"] with *People v. Harbolt* (1988) 206 Cal.App.3d 140,149 [no requirement to advise on penal consequences].) Delisi submits that in this case, he should have been told that if he were convicted of two Penal Code section 422 offenses, his conviction for a future felony could expose him to a 25-year-to-life sentence.

However, nothing in the record suggests that Delisi was under any misconception when he waived his right to counsel about the penal consequences if he were to be convicted in this case. (Compare *U.S. v. Erskine*, *supra*, 355 F.3d at p. 1165 [transcript showed that the defendant was mistaken about the length of his potential sentence].) To the contrary, it appears that Delisi was aware of the nature and gravity of the charges. When the subject of self-representation was first discussed at the September 16 hearing, the court told him "these are very serious offenses." When he waived counsel at the November 18 hearing, the court confirmed he understood that Penal Code section 422 charges involved threats made to the victim. When he again waived counsel at the beginning of trial, he was informed that he could be sentenced to state prison if he were convicted. He shortly thereafter gave an opening statement acknowledging that he was charged with "two felony strike counts" that were "serious matters" under California law. The record as whole establishes that Delisi's waiver of the right to counsel was knowing and intelligent.

The situation in *People v. Noriega* (1997) 59 Cal.App.4th 311 (*Noriega*) provides a useful contrast. The *Noriega* court stated: "From the quoted exchange it is clear the trial court gave no specific warnings or advisements regarding the risks and dangers of self-representation. The court did not inquire whether appellant understood the charges against him and the potential penal consequences if he lost at trial. The court did not warn him the trial court would treat him like any other attorney and that he could expect no special treatment or advice from the court during his trial. The court did not point out appellant's lack of legal skills and the fact that his opponent at trial would be both

12

experienced and prepared. The court did not advise appellant he had no right to either standby, advisory or cocounsel in the event he decided to represent himself. [Citations.] In short, the trial court did not give any necessary warnings to assure itself appellant was making an informed and intelligent decision to represent himself despite the disadvantages and risks of that choice." (*Id.* at pp. 319-320.) On that record, the court's warnings were held to be inadequate. (*Id.* at p. 321.)

The record here is the opposite of the record in *Noriega*. The court explained at length the disadvantages of self-representation, and did everything it could to dissuade Delisi from waiving counsel. In *Noriega*, "the court not only failed to warn appellant about the risks of self-representation but seemed to encourage him to take that course." (*Noriega*, *supra*, 59 Cal.App.4th at p. 321.) Delisi argues that the same thing happened here because the court remarked at the November 18 hearing "[y]ou're certainly very articulate and convinced of your ability to represent yourself." Delisi writes: "If articulateness and confidence sufficed, then glib fools would be superb advocates." Perhaps true, but this case is unlike *Noriega*. The court's remark in this case followed extended advice against proceeding in pro. per. and, in context, was just an observation of Delisi's insistence about representing himself. The record refutes Delisi's claim that the court encouraged his decision.

(2) *Whether the Waiver was Voluntary*

Delisi contends that his waiver of counsel was involuntary because he was forced to make a choice to either represent himself or be represented by a "disinterested" attorney. Delisi notes that he was not informed at the November 18 hearing of his right to move for substitute counsel when he expressed dissatisfaction with his lawyer, and suggests that the court erred in failing to hold a hearing as prescribed in *People v. Marsden* (1970) 2 Cal.3d 118). The court considered convening a *Marsden* hearing, but did not proceed with one because Delisi wanted to represent himself, not secure new appointed counsel. Although Delisi complained about his attorney, he apparently believed that he could represent himself better than *any* lawyer. He said, "I think I can do a better job than the public defender" because "I know all the witnesses personally, and I

13

know all their lies, which she does not know." He "d[id]n't need help" because he "ha[d] all the facts inside of [him]." Delisi's waiver was voluntary.

(3) *Whether the Waiver was Competent*

Portions of the record raise questions about Delisi's mental health, and he now contends that he was not mentally competent to waive his right to counsel. At the outset of the case, Delisi was considered for a Penal Code section 1368 evaluation. When the court referred to Penal Code section 1368 at the November 18 hearing, defense counsel did not advocate for an evaluation, but said she "certainly ha[d] questions," about his competence, and indicated there might be grounds for an insanity plea. Delisi asked questions at trial about his mental illness and disability, and elicited testimony that he had taken very high doses of Ativan during his relationship with one of the victims. The probation report stated that he was taking Paxil, and that obsessive compulsive disorder, and anxiety and panic disorders, prevented him from working.

As would have been expected, Delisi was not a very skilled advocate for his cause. But the court confirmed, before accepting his initial waiver of counsel, that he was not under psychiatric care, and nothing he said or did in the case makes us question his mental competence. Insofar as it appears from the transcripts, Delisi was entirely lucid throughout the proceedings. The record as a whole does not support his claim of incompetence.

(4) *Whether the Court Misunderstood Its Discretion*

Courts have discretion to deny requests for self-representation by " 'gray-area defendants,' " those who are competent to stand trial but " 'suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.' " (*People v. Johnson* (2012) 53 Cal.4th 519, 527; see also *id.* at p. 528.) Delisi speculates that the court was unaware of that discretion at the November 18 hearing because it told him that he had "an *absolute right* under the Constitution to represent [himself]." (Italics added.) However, a judge is presumed to know and follow the law (*People v. Coddington* (2000) 23 Cal.4th 529, 644, disapproved on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13), and the court's

14

observation that there is an absolute right to self-representation did not rebut that presumption here. In context, the court was merely advising Delisi it could not prevent him from representing himself just because it believed that he was unwise to assert that right. No error appears.

## C. Jury Trial Waiver

### (1) *Record*

After a brief opening session on December 9, Delisi's trial was continued to Monday, December 12. Shortly after the case was called on December 12, Delisi waived his right to a jury trial. The first relevant portion of the transcript reads as follows:

"The Court: . . . You may have further heard this morning that our other matter that was set for trial this morning confirmed that we're going to go forward with the trial as scheduled to begin on Wednesday. We can do one of two things. What is the estimate of this case?

"[The Prosecutor]: Three days.

"The Court: I can send the matter back to Department 1 forthwith to see if there's another court to take the case—is this a jury trial?

"[The Prosecutor]: As far as I'm understanding, yes.

"The Court: Mr. Delisi, you have a right to have a jury trial in this case. Now, you can waive that right, that's totally up to you, and I'm wondering if you have given any thought to waiving your right to a jury trial? [¶] Let me tell you what happens: If you waive that right and if the People waive their right because you both have a right to have a jury trial, then the matter would be tried before the Court only without a jury, and I'm wondering if you are willing to allow that to occur?

"The Defendant: So the decision would be made by the Judge in that case?

"The Court: Yes, just the Judge, which I'm anticipating would be me, but what I'm asking you is before we have that conversation if you are willing to consider—you understand your right. Correct?

"The Defendant: Well, I'm willing to consider it. I don't know much about that.

15

"The Court:  Well, I'll explain it to you. [¶] In a criminal case, you have a right to have a trial before a jury.  That means 12 members of the community who would come in here, and you would go through a jury selection process by questioning the jurors.  There are certain constraints about questioning the jurors, but you would question the jurors and we would seat a jury panel, and you would provide the evidence to the jury and they would make a factual determination. [¶] I'd still be the judge who makes the legal determinations, points of laws and things of that nature, but with that understanding, you have a right to waive that right if you'd like and try your entire case before just the Judge and not a jury, and I'm wondering if you are willing to waive your right to a jury trial?

"The Defendant:  At this point it is hard to make a decision.  I will have to go with a jury trial at this point.

"The Court:  I'm sorry?

"The Defendant:  At this point it's a little hard to go with a decision, but I will stick with the jury trial.

"The Court:  Okay.  Then the two options would be this:  I can send the matter back to Department 1 forthwith to see if there's another courtroom that can hear the case or I can trail the matter to Wednesday to see what may happen with our other case."

The prosecutor then asked how long the trial of the other case was projected to take, and the court estimated that the other case would extend through the following week.  After some other discussion, the following conversation culminating with Delisi's waiver of jury trial ensued:

"[The Prosecutor]:  If we could be transferred to 1 to see if we can find a home this week?

"The Court:  That makes sense.  Do you have any objection to that, sir?

"The Defendant:  No.

"The Court:  Okay.  Then what I'm going to do is transfer the matter to Department 1 forthwith, and we'll see if we can find another home for the case this week.

"The Defendant:  Okay.  Is there a way I can . . . keep the case here and I can have you as my Judge even though we're going to have a jury trial?

16

"The Court: Well, that's why I was—one of my considerations was if you and the People waive the right to a jury trial, it would be my intent to start your case as soon as possible. We can start it now if you would like.

"The Defendant: So the witnesses would not be here?

"The Court: "Oh, no, the witnesses all have to testify. The only difference is as to who hears that evidence. In a jury trial, there will be 12 people over there in that jury box who listen to all the evidence. In a court trial, there would be none of those jurors. All the evidence, no matter who puts it on, would be right here on the witness stand. I'd listen to the evidence and I would make a decision of the case. [¶] Now, that means you can also submit documentary evidence. You referred to some text messages you have and those sort of things. Those items would be submitted directly to the Court. There just wouldn't be a jury to listen to the case, that's all.

"The Defendant: So when you say we can start that now, the witnesses are here today?

"The Court: Well, I mean actually start the trial, which means we could start taking evidence in the case.

"The Defendant: Okay.

"The Court: You are entitled to make an opening statement before we begin the case. There may be some motions in limine as to evidence in the case. I don't know that, I haven't reviewed them, but if you wanted to waive a jury trial, I would be willing to keep the case and start it today, but I can't fit it in as a jury trial before the other case begins on Wednesday.

"The Defendant: And there's obviously not time to think about this for a day?

"The Court: Well, it just puts you at risk in the sense that I may not be able to get the trial finished. [¶] Let me ask [the prosecutor], do you have a feel if this case were tried before the Court without a jury, how long would it take?

"[The Prosecutor]: I think it would take a day.

"The Court: An entire day. There you have it. So you may be able to fit it all in. [¶] Now, if you want to give this some additional thought, you think a half an hour would be enough?

"The Defendant: A little recess, yes, that would be good.

"The Court: Now, it's totally up to you. I mean, there isn't any pressure in making—or entering into a waiver of a jury trial. You either want to do it or you don't want to do it. [¶] If you have any questions for me, I'm willing to answer those questions, but the trial generally proceeds exactly the same in a court trial as in a jury trial. You just do away with the selection process, the seating of the jury, the seating of alternates, I mean, that can take a day and a half reasonably, and instead all of the evidence, whether it is written or oral, is all presented right here in the court, but it is all presented to me and not to a jury.

"The Defendant: That sounds good. Let's just do it. Let's just do that.

"The Court: Okay. Do you have any questions for me at this point in time about a jury trial?

"The Defendant: No.

"The Court: Okay. [Prosecutor], what is the People's position?

"[The Prosecutor]: The People would be willing to waive a jury trial.

"The Court: Okay. So, sir, you now understand your right to a jury trial. Is that correct?

"The Defendant: Uh-huh.

"The Court: Is that 'yes'?

"The Defendant: Yes.

"The Court: Okay. And keeping that right in mind, in this case we do have an information that has two counts of the violation of Penal Code section 422 and one count of a violation of Penal Code section 594(a), keeping that it mind, are you willing to waive your right to a jury trial as to each and all of those issues?

"The Defendant: Yes

18

"The Court:  Okay.  And, [prosecutor], you will waive the People's right to a jury trial?

"[The Prosecutor]:  So waived, your Honor.

"The Court:  Then I will accept the waiver of the jury trial by both sides as knowingly, voluntarily, and intelligently given, and you will proceed as a court trial . . . ."

The parties gathered their witnesses, and the trial was completed that afternoon.

(2) *Review*

"A criminal defendant may waive fundamental rights, including the right to a jury trial.  [Citation.]  A defendant's waiver of the right to jury trial, as with other fundamental rights, may be accepted by the court only if knowing and intelligent—made with a full awareness of the nature of the right being waived and the consequences of the waiver.  In addition, the waiver must be voluntary."  (*People v. Smith* (2003) 110 Cal.App.4th 492, 500.)  A waiver is voluntary if it is the product of a free and deliberate choice, rather than intimidation, coercion, or deception.  (*People v. Collins* (2001) 26 Cal.4th 297, 305 (*Collins*).)

Delisi argues that his jury trial waiver was coerced because the court made "initial, direct, and repeated requests" for it.  However, while the court initiated discussion of the waiver as a means of avoiding transfer of the case to another department, it advised Delisi that any waiver was "totally up to you," and dropped the subject after Delisi said that he wanted to stick with a jury trial.  The waiver was discussed again only in order to accommodate Delisi's expressed desire to have the judge be the one to preside in his case.  Before accepting the waiver, the court again advised "it's totally up to you . . . there isn't any pressure in . . . entering into a waiver of a jury trial.  You either want to do it or you don't want to do it."  The colloquies between the court and Delisi do not establish that his waiver was coerced.

Citing *Collins*, *supra*, 26 Cal.4th at pp. 300, 309, Delisi suggests that his waiver was coerced because it was made in exchange for a benefit—keeping the case before the judge he wanted.  In *Collins*, where the promise of "some [unspecified] benefit" in exchange for the waiver was held to be improper (*Collins*, *supra*, at pp. 300, 302), the

19

court "endorse[d] the principle that no leniency may ever be accorded a defendant because of a jury trial waiver" (*id.* at p. 314 (conc. opn. of Brown, J.)  But no leniency was promised here, and a court does not coerce a waiver merely by explaining that a court trial would take less time than a jury trial.  (*Id.* at p. 315.)

Delisi argues that his jury trial waiver was not knowing and intelligent because he "never expressly waived his right to a unanimous verdict."  He relies on the decisions in *People v. Garcia* (2012) 204 Cal.App.4th 542, and *People v. Traugott* (2010) 184 Cal.App.4th 492, but his reliance is misplaced because those cases did not concern jury trial waivers.  They involved situations where verdicts were returned by only 11 of 12 jurors.  (*People v. Garcia*, *supra*, at p. 550.)

Delisi contends that his waiver was not knowing and intelligent because he was not informed that unanimous verdicts would be required.  This argument is based on federal cases holding that a defendant considering a jury trial waiver should be informed that:  "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial."  (*U.S. v. Duarte-Higareda* (9th Cir. 1997) 113 F.3d 1000, 1002; *U.S. v. Christensen* (9th Cir. 1994) 18 F.3d 822, 825.)  The colloquy between Delisi and the court addressed the first, second, and fourth of these jury trial characteristics, and we are not persuaded that the court's failure to mention the third rendered Delisi's waiver unknowing and unintelligent.  (See *People v. Smith, supra,* 110 Cal.App.4th at p. 500 [California cases prescribe no "specific formula" for obtaining a valid jury trial waiver].)

Delisi contends that the court was required to inquire into his competence before accepting his jury trial waiver because his mental health was a "substantial issue."  (See *U.S. v. Christensen*, *supra*, 18 F.3d at pp. 825-826.)  We disagree for reasons previously explained.

## II. DISPOSITION

The judgment is affirmed.

_____
Siggins, J.

We concur:

_____
McGuiness, P.J.

_____
Pollak, J.