**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

GILBERTO BAILON-SANTANA,
           *Defendant-Appellant.*

No. 04-50079

D.C. No.
CR-02-00118-AHS-
01

OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
August 3, 2005—Pasadena, California

Filed December 6, 2005

Before: William C. Canby, Jr., Alex Kozinski and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Kozinski;
Dissent by Judge Rawlinson

15771

## COUNSEL

Michael Ian Garey, Santa Ana, California, for the defendant-appellant.

Nancy B. Spiegel, Assistant United States Attorney, Los Angeles, California; Debra W. Yang, United States Attorney; Wayne R. Gross, Assistant United States Attorney, Chief,

Southern Division; John D. Early, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

## OPINION

KOZINSKI, Circuit Judge:

We consider whether an attorney's representation that he translated a jury waiver form for his non-English speaking client obviates the need for an in-court waiver colloquy.

### Facts

Bailon-Santana was charged with conspiracy to distribute and to possess with intent to distribute more than 500 grams of cocaine, and possession with intent to distribute cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. The defendant, a Mexican native, communicated with the court through a court-certified interpreter during the proceedings. Before trial, he signed a jury waiver form pursuant to Federal Rule of Criminal Procedure 23(a)(1), but the form was printed only in English. His attorney represented both on the form and in court that he had translated the form into Spanish for his client. The district court asked defendant whether he had waived his jury trial right and the defendant answered in the affirmative. The court then accepted the waiver and proceeded to hold a bench trial. Bailon-Santana was convicted and sentenced to thirty years in prison. He now challenges the validity of his jury waiver and the sufficiency of the evidence underlying his conviction.

### Discussion

**[1]   1.** In *United States* v. *Duarte-Higareda*, 113 F.3d 1000 (9th Cir. 1997), we held that "where the record indicates a special disadvantage or disability bearing upon the defendant's understanding of the jury waiver," such as a language

barrier, "the district court must conduct a colloquy with the defendant to ensure that the wavier is voluntary, knowing, and intelligent." *Id.* at 1003. *Duarte-Higareda* is on all fours with our case except for one arguably relevant fact: The opinion there noted that "[t]he record does not reflect whether the written waiver was translated into Spanish for Duarte." *Id.* at 1002. Although *Duarte-Higareda* noted this in its factual exposition, it made no reference to it in its discussion. It is unclear, therefore, whether the *Duarte-Higareda* court would have reached a different result had the defendant there signed a properly translated waiver form. Were we to conclude that Bailon-Santana signed a form that was properly translated for him before he signed it, we would have to determine whether that adequately distinguishes *Duarte-Higareda*.

**[2]** In federal courts, translations for criminal defendants and witnesses who are not fluent in English are normally provided by certified experts. Congress requires federal courts to certify interpreters, like the one who translated for Bailon-Santana throughout the proceedings, for use in federal judicial proceedings. *See* Court Interpreters Act, 28 U.S.C. §§ 1827-28. To be certified as a Spanish federal-court interpreter, an applicant must pass a rigorous written and oral examination, which requires native-level mastery of both English and Spanish. Many people claim "fluency" in a foreign language, but "[t]here are few persons in the United States who can interpret with the degree of precision and accuracy required at the Federal court level." H.R. Rep. No. 100-889, at 58 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6019. Jurors who consider their own translation skills superior to those of the certified interpreter are nevertheless instructed to consider only the certified translation. *See* 9th Cir. Model Crim. Jury Instruction 3.20.

Use of certified interpreters ensures that the criminal defendant or witness who is not fluent in English is given an accurate account of the proceedings, and that the other courtroom participants understand exactly what the non-English-

speaking individual is saying. Because the judge and other participants in the courtroom usually have no way of confirming whether the translation is accurate, training and certification by an authority qualified to test these skills provides an objective verification that everyone in the courtroom is on the same page.

**[3]** Bailon-Santana's lawyer is not certified as a Spanish-English interpreter—at least the record does not reflect that he is. Rather, in a signed statement he filed with the court, the attorney represented that he is "fluent in written and spoken English and Spanish languages" and that he "accurately translated this entire waiver from English into Spanish to defendant Gilberto Bailon-Santana." The lawyer also stated that he had "carefully discussed this waiver of jury trial with [his] client," that he had "fully advised [his] client of his right to a jury trial and of the consequences of entering into this waiver," and that his "client's decision to enter into this waiver [was] an informed and voluntary one, and one in which [he] join[ed]." At the jury waiver hearing, the court asked the defense attorney whether he had translated the waiver, and the attorney reiterated that he had done so.

**[4]** While the lawyer's statements are reassuring, and his representation that he is fluent in Spanish was no doubt entirely candid, his statement nonetheless lacks one crucial component: confirmation by someone familiar with the requisite standard that the lawyer's fluency is commensurate with the level required for translating the sometimes difficult words and concepts used in federal criminal cases. Certification as an official court interpreter is one way of ensuring competence, but it is not the only way. Where a certified interpreter is not "reasonably available," *see* 28 U.S.C. § 1827(b)(2), Federal Rule of Evidence 604 provides a means for the court to qualify an individual as an interpreter, employing the methodology used for qualifying expert witnesses. One way or the other, however, the record must reflect

a determination, based on something more than the individual's say-so, that he has the requisite translating ability.

**[5]** The record here reflects only the defense lawyer's self-assessment. While we don't doubt that he was entirely truthful, we have no way of knowing whether he is even familiar with the standard used to certify interpreters, and thus we cannot be sure that his Spanish-speaking ability is as good as he believes it to be. We do not hold that an individual's self-assessment can never be a sufficient basis for a finding that he has the requisite fluency to serve as an interpreter. Rather, any self-assessment, if it is to be sufficient, must reflect a familiarity with the applicable standard, and must also reveal the basis for the assessment—such as a description of the training received in order to gain the requisite level of fluency. And, of course, the district court must make a finding that the interpreter is qualified as an expert witness and is competent to serve as an interpreter in a federal criminal proceeding. None of this happened here. Rather, the district court seems to have accepted the lawyer's self-certification at face value. We treat this as a finding by the district court that the lawyer properly translated the form, and reverse that finding as not supported by the record.[1]

**[6]** Absent a properly-translated jury form, our case is identical to *Duarte-Higareda*, and we have no reason to resolve the question apparently left open there—whether the district judge must conduct a colloquy where the defendant *has*

---

[1]Our dissenting colleague correctly observes that "[t]he record reflects no expression of surprise, confusion or objection from Bailon-Santana upon hearing that his counsel 'served as the interpreter' during the jury waiver process." Dissent at 15781. But we're not sure what Bailon-Santana should have been confused or surprised about, or what occasion he would have had to object. His lawyer had assured him that he had translated the form accurately and nothing Bailon-Santana learned at the hearing would have caused him to doubt the accuracy of the translation. If the lawyer's translation was nevertheless inadequate, nothing Bailon-Santana learned at the hearing could have brought that inadequacy to light.

signed a properly translated form.[2] As in *Duarte-Higareda*, the jury trial waiver was invalid, and we must reverse the conviction.[3]

**2.** We must also consider defendant's contention that his conviction was not supported by sufficient evidence because "a challenge to the sufficiency of the evidence implicates a defendant's rights under the Double Jeopardy Clause." *United States* v. *Boulware*, 384 F.3d 794, 810 (9th Cir. 2004), *cert. denied*, 126 S. Ct. 337 (2005). Defendant made a timely Rule 29 motion for acquittal based on the insufficiency of the evidence, *see* Fed. R. Crim. P. 29(a), so we review his claim de novo. *Boulware*, 384 F.3d at 810. "We will deny the claim if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime proved beyond a reasonable doubt." *Id.*

[7] There was ample evidence to support the conspiracy charge. A conspiracy requires "1) an agreement to accomplish an illegal objective, 2) coupled with one or more acts in furtherance of the illegal purpose, and 3) the requisite intent necessary to commit the underlying substantive offense." *United States* v. *Penagos*, 823 F.2d 346, 348 (9th Cir. 1987). The

---

[2]We also have no reason to determine whether, in the event that a written waiver can obviate the need for a colloquy, the written waiver form in this case set forth sufficient information to make Bailon-Santana's waiver knowing and intelligent.

[3]The dissent mistakenly asserts that "[t]he district court [here] did as we directed in *Duarte-Higareda*." Dissent at 15781. In *Duarte-Higareda*, we instructed that the district court should educate the defendant about the jury trial right and then "question the defendant to ascertain whether the defendant understands the benefits and burdens of a jury trial." *Duarte-Higareda*, 113 F.3d at 1002. Here, the only communication the district court had with Bailon-Santana on the matter of the waiver was to ask if he had waived his jury trial right by signing the waiver form. The court did absolutely nothing to educate defendant about the jury trial right, nor did it probe defendant's understanding of the right he was giving up. Contrary to the dissent's characterization, the district court here omitted everything that *Duarte-Higareda* requires.

government presented evidence that defendant and his accomplice drove in two cars along routes calculated to evade law enforcement to deliver a car filled with drugs for shipment across the country. A reasonable trier of fact could have concluded that defendant knew about the cocaine in the car on the basis of his driving position, and that the drive constituted an overt act in furtherance of the conspiracy to distribute drugs. The evidence in the first trial having been sufficient, defendant may be tried again.

**REVERSED AND REMANDED.**

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. I am not persuaded that our holding in *United States v. Duarte-Higareda*, 113 F.3d 1000 (9th Cir. 1997), compels a finding that the jury trial waiver in this case is unenforceable.

In *Duarte-Higareda*, the jury trial waiver was invalidated because "the district court . . . fail[ed] to conduct a colloquy with Duarte to ensure that his jury waiver was made voluntarily, knowingly, and intelligently." *Id*. at 1003. In this case, the district court did question Mr. Bailon-Santana regarding the jury trial waiver he executed.

The jury trial waiver executed by Bailon-Santana specified that he "knowingly, voluntarily and freely" waived his right to a jury trial. The waiver also acknowledged that the contents had been read to Bailon-Santana in Spanish. The problem, according to the majority opinion, is that the waiver was translated by Edmundo Espinoza, Bailon-Santana's attorney.

Mr. Espinoza inserted the following declaration into the waiver:

> I, EDMUNDO ESPINOZA (handwritten), am flu-
> ent in written and spoken English and Spanish lan-
> guages. I accurately translated this entire waiver
> from English into Spanish to defendant Gilberto
> Bailon-Santana on this date.

The jury trial waiver was signed by Bailon-Santana and his attorney on September 22, 2003. Approximately two weeks later, Bailon-Santana's trial commenced. On the first day of trial, in the presence of the parties and a court interpreter, the court noted its intention to "confirm" the jury trial waiver. The court stated:

> The court has granted the party's request for jury
> waiver, and this was previously filed. And so, I want
> to confirm with both parties *and defendant* that this
> is how they wish to proceed.
>
> Mr. Bailon-Santana, you gave up your right to
> jury trial set forth in the writing that you signed back
> on September 22, 2003; is that correct?
>
> (emphasis added.)

The interpreter, replying on behalf of Bailon-Santana, affirmed that he signed the jury waiver. The court verified that Mr. Espinoza served as the interpreter for Bailon-Santana during the course of events culminating in the jury waiver and accepted the waiver with the following words:

> Then I find, based upon the written waiver once
> again, that the defendant has knowingly, intelli-
> gently, and voluntarily waived his right to have the
> matter tried to a jury in light of today's further agree-
> ment along with the explanations set forth in the
> waiver filed on September 29.

The majority opinion acknowledges Mr. Espinoza's representation that he is fluent in Spanish and accurately translated the waiver to his client. Nevertheless, the majority opinion invalidates the waiver because Mr. Espinoza is not a certified court interpreter. This holding goes far beyond our ruling in *Duarte-Higareda*.[1] In *Duarte-Higareda*, we focused on the court's failure to "conduct a colloquy with the defendant to ensure that the waiver is voluntary, knowing and intelligent." *Duarte-Higareda*, 113 F.3d at 1003. The district court in this case did as we directed in *Duarte-Higareda*.[2] It inquired of the defendant and of his counsel regarding the circumstances surrounding the execution of the waiver. The certified court interpreter conveyed the court's inquiries and remarks to Bailon-Santana. The record reflects no expression of surprise, confusion or objection from Bailon-Santana upon hearing that his counsel "served as the interpreter" during the jury waiver process.

This case is a far cry from *Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999 (9th Cir. 1997), where the ability and credibility of the translator were legitimately called into doubt. *See id.* at 1011 (describing the translator's need for an interpreter during his deposition). No similar challenge was raised as to Mr. Espinoza's translation of the jury trial waiver. Under the circumstances of this case, I cannot agree that the district court failed to discharge its responsibility of ensuring that the defendant's jury waiver was voluntary, knowing and intelligent.

---

[1] *Cf. United States v. Valdivia*, 60 F.3d 594, 595 (9th Cir. 1995), where we rejected an ineffective assistance of counsel claim predicated upon defense counsel's use of the defendant's daughter as an interpreter.

[2] The majority opinion characterizes this statement as "mistaken." *See* Majority Opinion, p. 15778 n.3. However, in *Duarte-Higareda*, we held that the district court "failed to discharge [its] responsibility [b]y failing to address Duarte at all." *Duarte-Higareda*, 113 F.3d at 1003. Although the court's inquiry in this case was not ideal, it cannot be said that the court failed to address Bailon-Santana at all.