**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MALA TRAVON SHORTY,
*Defendant-Appellant*.

No. 11-10530

D.C. No.
3:10-cr-08100-GMS-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge and
G. Murray Snow, District Judge, Presiding[*]

Argued and Submitted
November 4, 2013—San Francisco, California

Filed December 20, 2013

Before: Stephen Reinhardt, John T. Noonan,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Reinhardt

---

[*] Judge Murguia presided over the jury-trial waiver hearing. Judge Snow presided over the bench trial.

**SUMMARY**[**]

**Criminal Law**

The panel reversed bench-trial convictions for aiding and abetting the making of a false statement in connection with the acquisition of a firearm, aiding and abetting the making of a false statement concerning information that must be kept by a firearms dealer, and being a felon in possession of a firearm, and remanded.

The panel held that the district court failed to take the necessary precautions to ensure that the defendant's jury-trial waiver was made knowingly and intelligently, where the court did not obtain a written waiver, the defendant informed the district court that he has a low I.Q., his attorney informed the court that the defendant is learning disabled, and the district court did not conduct an adequate colloquy.

Because the panel rejected the defendant's contention that there was insufficient evidence to support the aiding-and-abetting convictions, the panel concluded that the Double Jeopardy Clause is not implicated and that the government may retry the defendant on all counts.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lee Tucker, Assistant Federal Public Defender, Tucson, Arizona, for Defendant-Appellant.

Dominic Lanza, Assistant United States Attorney, Phoenix, Arizona, for Plaintiff-Appellee.

**OPINION**

REINHARDT, Circuit Judge:

Mala Travon Shorty appeals his convictions for aiding and abetting the making of a false statement in connection with the acquisition of a firearm, 18 U.S.C. §§ 922(a)(6) & 924(a)(2), aiding and abetting the making of a false statement concerning information that must be kept by a firearms dealer, 18 U.S.C. § 924(a)(1)(A), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). He raises two issues on appeal. First, he contends that the district court failed to conduct an adequate colloquy before accepting his jury-trial waiver. Second, he contends that there was insufficient evidence to support his convictions on the four aiding and abetting counts. We agree with his first claim, but not his second. We reverse and remand on all counts.

**I.**

Shorty was arrested in 2010 after federal agents discovered twelve firearms, ammunition, and a gun safe at his home in Flagstaff, Arizona. He was charged with seven felonies and pleaded not guilty to all seven, but waived his right to a jury trial, electing to be tried by the court instead.

Before accepting the waiver, the district judge questioned Shorty directly:

> Court:  You're Mala Travon Shorty?
>
> Defendant:  Mala, your Honor.
>
> Court:  Mala, thank you. Sorry. Your lawyer, you've just heard the discussion; is that correct?
>
> Defendant:  Yes, ma'am.
>
> Court:  And I don't know very much about you, Mr. Shorty, but what's your level of education?
>
> Defendant:  Graduated high school. But I do have a low I.Q.
>
> Counsel:  Judge, he is learning disabled.
>
> Court:  Okay. Have you been able to understand all of the proceedings?
>
> Defendant:  Yes, I understand everything that's going on.
>
> Court:  You heard your lawyer say that you are—tell me that you are wanting and willing to waive your right to a jury trial. Is that correct?
>
> Defendant:  Yes.

Court: Alright. You understand that this is a—that you are charged with a number of felony offenses. It's a false statement in connection with acquisition of a firearm in Counts 1 through 4; false statement concerning information that must be kept by firearms dealer, Counts 2 and 5; and then felon in possession of a firearm and/or ammunition as charged in counts 3, 6, and 7. And then there's a forfeiture allegation. All of these entitle you to a jury trial. Do you understand that?

Defendant: Yes.

Court: Alright. 12 people would sit, listen to the evidence, and then apply the facts to the law, all of the testimony and all of the evidence that's submitted, and then make a determination as to whether or not you're guilty of these offenses. Do you understand that?

Defendant: Yes, ma'am.

Court: Alright. And so you're telling me that you would rather not have the jury trial, you're willing to waive your right to that trial; is that correct?

Defendant: Yes.

Court: And you are—according to your lawyer, you would like to have a trial to the

Court, which is to me. Do you understand that?

Defendant: Yes.

Court: And that's how you would like to proceed?

Defendant: Yes.

Court: Alright.

The bench trial took place four months later. The following facts were established at trial:

In October 2008, Shorty contacted his ex-girlfriend, Millie Smallcanyon, and asked her to purchase a gun for him. He could not buy the gun himself, he explained, because of his "past with a record."[1] Smallcanyon agreed to help, and accompanied Shorty to Ruff's Sporting Goods, a gun store in Flagstaff, Arizona. She entered the store alone, holding a slip of paper with the name of the gun Shorty had requested and the money that he had given her to pay for it. When she purchased the gun—a Smith & Wesson .38 revolver costing $748.26—she filled out a Form 4473, a form that federal law requires in order to purchase a firearm from a federally licensed dealer and which a dealer must keep in his records. The form required Smallcanyon to state whether she was the "actual buyer" of the gun and notified her: "You are not the actual buyer if you are acquiring the firearms on behalf of

---

[1] Shorty has three prior state court convictions, all of which resulted from guilty pleas: drug possession (Arizona, 1990), felon in possession of a firearm (California, 1994), and assault (Arizona, 2000).

another person. If you are not the actual buyer, the dealer cannot transfer the firearms to you." Smallcanyon attested that she was the "actual buyer," knowing that this was false and that Shorty was the actual buyer. She paid for the gun, left the store, and gave the gun to Shorty.

In July 2009, Shorty again asked Smallcanyon to purchase firearms for him. This time, he accompanied her to "Shooter's World" in Phoenix, Arizona. Smallcanyon testified that at Shooter's World,

> [Shorty] was letting me know what, you know, what he wanted and, you know, asking—having me ask the questions. And he was doing most of the shopping . . . and through me, he let [me] know what it was that he wanted to purchase, along with, like, the little, you know, like the stuff that come[s] along with guns.

Smallcanyon purchased nine firearms and various accessories for $7,243.99, again filling out a Form 4473 and claiming to be the "actual buyer." She paid with money that Shorty had given her, left the store, and handed the guns and accessories to Shorty. Smallcanyon's large purchase at Shooter's World was referred to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) as a "suspicious transaction." An ATF agent contacted Smallcanyon, who admitted that she had purchased the guns for Shorty. ATF agents subsequently executed a search warrant for Shorty's house and discovered twelve firearms, including those that Smallcanyon had purchased at Ruff's Sporting Goods and Shooter's World.

At the close of the evidence, Shorty moved pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal on the charges that he aided and abetted Smallcanyon's false statements at both gun stores that she was the "actual buyer" of the guns. Shorty argued that because there was no evidence that he *knew* that Smallcanyon would have to make false statements in order to buy the guns or *instructed* her to do so, there was insufficient evidence that he aided and abetted her making of these statements. The district judge denied the motion, deeming it sufficient that Shorty asked Smallcanyon to "represent herself as the purchaser in his stead." The district judge found Shorty guilty on all counts and sentenced him to 33 months' imprisonment and three years supervised release.

## II.

On appeal, Shorty first asserts that his jury-trial waiver was invalid because the district court's colloquy was not adequate to ensure that his waiver was knowing and intelligent.

We review the adequacy of a jury-trial waiver de novo. *United States v. Christensen*, 18 F.3d 822, 824 (9th Cir. 1994) (citing *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1252 (9th Cir. 1987)). Federal Rule of Criminal Procedure 23 requires that three conditions be met for a defendant to waive his right to a jury trial. The rule states:

> If the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves.

Fed. R. Crim. Proc. 23(a). There is a fourth requirement: the waiver must be knowing and intelligent. *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997). Although Rule 23 states that the waiver must be in writing, we have held that under certain circumstances an oral waiver may be sufficient. *See United States v. Saadya*, 750 F.2d 1419, 1420 (9th Cir. 1985) (citing *United States v. Reyes*, 603 F.2d 69, 71 (9th Cir. 1979)). The two forms of waiver are not equal, however. A writing confers on a waiver the presumption that it was made knowingly and intelligently. *See United States v. Cochran*, 770 F.2d 850, 851 (9th Cir. 1985) (citing *United States v. Goodwin*, 446 F.2d 894, 895 (9th Cir. 1971) (per curiam) and *United States v. Reyes-Meza de Polanco*, 422 F.2d 1304, 1305 (9th Cir.) (per curiam), *cert denied*, 397 U.S. 1081 (1970)). There is no writing in this case, and therefore, in determining whether Shorty's oral waiver was knowing and intelligent, we proceed without any presumption that it was.

Courts have a "serious and weighty responsibility" to determine whether a waiver is knowing and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938); *Christensen*, 18 F.3d at 826 (quoting *Johnson*, 304 U.S. at 465). In *United States v. Cochran*, we "implore[d]" district courts to ensure that a jury trial waiver is knowing and intelligent by engaging in a substantial colloquy with defendants as well as informing them of four crucial facts: (1) twelve members of the community compose a jury; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. 770 F.2d at 853. In *Cochran*, although the district court had failed to instruct on these four facts, the error did not require reversal because there was a written waiver and "[t]here [were] no additional facts in the record

bearing upon the question whether the waiver was voluntary, knowing and intelligent." *Id.* at 851.

In *United States v. Christensen*, we held that a district court's failure to have an adequate colloquy with a defendant before accepting his jury-trial waiver *required* reversal where, although there was a written waiver, there was an "additional fact[]"—namely, evidence that the defendant might be mentally or emotionally unstable. 18 F.3d at 825–26. We stated:

> In cases where the defendant's mental or emotional state is a substantial issue, "imploring" district courts to conduct fuller colloquies is not enough. We must require them to do so. Christensen rightly points out that *Cochran* does everything but require such colloquies. . . . We now hold that district courts may not discharge this responsibility in cases where they have reason to suspect a defendant may suffer from mental or emotional instability without an *in-depth colloquy* which reasonably assures the court that under the particular facts of the case, the signed waiver was voluntarily, knowingly, and intelligently made.

*Id.* (emphasis added). An in-depth colloquy, we held, includes instructing the defendant of the four facts listed in *Cochran*. *Id.* at 825. Because the district court's colloquy was not in-depth and did not inform Christensen of those four facts, we held that the waiver was invalid. *Id.* at 825–26. Three years later, in *United States v. Duarte-Higareda*, we identified another "additional fact" that necessitated an in-depth

colloquy, again even where there was a written waiver: a non-English speaking defendant. "Duarte's language barrier," we said, "like Christensen's mental illness, is a 'salient fact' that was known to the district court and put the court on notice that Duarte's waiver 'might be less than knowing and intelligent.'" 113 F.3d at 1003 (quoting *Christensen*, 18 F.3d at 825). Because the district court failed to have a colloquy with Duarte—let alone an in-depth colloquy—Duarte's wavier was invalid, and his conviction was reversed. *Id.*

In this case too, the district court failed to take the necessary precautions to ensure that Shorty's jury-trial waiver was made knowingly and intelligently. First, unlike the courts in *Christensen* and *Duarte-Higareda*, and contrary to the provisions of Rule 23, it did not obtain a written waiver. As a result, Shorty's waiver is not presumed valid, and his oral waiver—his only waiver—is subject to greater scrutiny. Second, the court was aware of an additional, "salient fact" that should have put it on notice that Shorty's oral waiver "might be less than knowing and intelligent": Shorty informed the court that he has a "low I.Q.," and his attorney told the court that Shorty is "learning disabled." Shorty's low I.Q. and learning disability created a significant possibility that he did not understand the import and consequences of waiving a jury trial—and it is this understanding at which the "knowing and voluntary" requirement is aimed. *See Christensen*, 18 F.3d at 826.[2] Third, under the circumstances,

---

[2] In fact, the evidence in this case of a special disadvantage or disability was even stronger than that in *Christensen*. At the time of the jury-trial waiver in *Christensen*, the defendant had merely requested a continuance for the possibility of raising an insanity defense; there was no evidence that the defendant was in fact intellectually disabled. Here, both Shorty and his attorney attested to Shorty's disability immediately before the colloquy.

the court's colloquy prior to accepting Shorty's waiver was inadequate to ensure that Shorty understood the right he was waiving. The court instructed Shorty on only two of the four facts required: it told him that a jury consists of 12 jurors and that if he waived his right, the court would try his case. Shorty was not advised, however, that he could help choose the jury or that the jury verdict must be unanimous.[3] Moreover, the court did not question Shorty in a way that would ensure that he understood the two pieces of information he was given. We have said that "the district court should question the defendant to ascertain whether the defendant understands the benefits and burdens of a jury trial and freely chooses to waive a jury." *Duarte-Higareda*, 113 F.3d at 1002; *see also Cochran*, 770 F.2d at 853 ("By asking appropriate questions the district court will also be better able to perform its task of determining whether a proposed waiver is in fact being offered voluntarily,

---

Moreover, additional evidence of Shorty's disability was introduced after the jury waiver. Smallcanyon testified at trial that Shorty is illiterate (a fact later confirmed by Shorty's lawyer), and Shorty's presentence report stated:

> [The defendant] reported that he has a significant learning disability and was enrolled in special education programs throughout his school years. The defendant has limited reading and writing abilities.
>
> The defendant reported he has been unemployed since he began receiving Social Security benefits in 1990 as a result of his learning disability.

[3] In this way, the colloquy in this case was less in-depth than the one we found inadequate in *Christensen*, as the latter included the unanimity instruction. *See Christensen*, 18 F.3d at 823 ("You understand that you waive the right to . . . a trial in which 12 jurors have to find you guilty.").

knowingly and intelligently."). Under these circumstances—the absence of a written waiver, the evidence that Shorty has a low I.Q. and learning disability, and the district court's failure to conduct an adequate colloquy—the district court did not fulfill its "serious and weighty responsibility" of ensuring that Shorty's waiver was knowing and intelligent.

The government attempts to liken this case to those in other circuits in which there was no written waiver and little discussion between the defendant and the court, and yet the waiver was deemed valid. These out-of-circuit cases, however, all involve highly educated defendants for whom there was, of course, no evidence in the record of a low I.Q. or learning disability. *See United States v. Carmenate*, 544 F.3d 105 (2d Cir. 2008) (a white-collar case in which there was "no indication in the record that the defendant was incapable of clearly and independently expressing his wishes"); *United States v. Leja*, 448 F.3d 86 (1st Cir. 2006) (a white-collar case with an "intelligent and articulate" college graduate defendant actively involved in his own defense); *United States v. Page*, 661 F.2d 1080 (5th Cir. 1981) (a white-collar case with a "highly educated and articulate" former biology professor defendant with a doctorate in parasitology, "suffering neither language nor perceptive difficulty").[4] Were Shorty as intellectually sophisticated and highly educated as these defendants, his colloquy might indeed have been sufficient.

---

[4] The same is true of *United States v. Bishop*, another case that the government relies on: the defendant in that case was a "sophisticated business proprietor" convicted of tax evasion. 291 F.3d 1100, 1114 (9th Cir. 2002).

The government also argues that Shorty's waiver was knowing and intelligent because he had experience with the criminal justice system: he pleaded guilty in state court three times, in 1990, 1994, and 2000, and endured a three-day jury trial in state court in 1994, which ended in a hung jury. We reject this argument. First, we are aware of no case in which we have held that prior experience with the criminal justice system negates a court's responsibility to conduct an adequate colloquy before accepting a jury-trial waiver.[5] Second, there is no evidence that Shorty had been properly instructed, on these prior occasions, of what his right to a jury trial entails. Finally, even if Shorty was properly instructed on his right to a jury trial, nothing suggests that he retained that information ten, fifteen, or even twenty years later when he waived the right again in 2010.

We also reject the government's suggestion that defense counsel's "assurances" in Shorty's presence that he would proceed by bench trial indicate that Shorty's waiver was knowing and intelligent. There is little support for the proposition that such assurances are relevant to the question whether a defendant's oral waiver is knowing and intelligent. The government cites *United States v. Cochran* and *United States v. McCurdy*, but those cases in no way relied on assurances by counsel. *See Cochran*, 770 F.2d 850; *McCurdy*, 450 F.2d 282 (9th Cir. 1971). Further, while the government is correct that the First Circuit, in *United States v. Leja*, listed

---

[5] In post-argument filings, the government identified *United States v. Gerritsen*, 571 F.3d 1001 (9th Cir. 2009), and *United States v. Glover*, 596 F.2d 857 (9th Cir. 1979). These cases are not on point, as the former involves waiver of the right to counsel and the latter a *Miranda* waiver, both situations in which we have adopted a more flexible approach to waiver and in which the formal requirements of *Christensen* and *Duarte-Higareda* do not apply.

"representations by defense counsel concerning the waiver" and the "defendant's presence in the courtroom at times when waiver was discussed" as factors relevant to determining whether a defendant's waiver is knowing and voluntary, it also identified "the extent of the particular defendant's ability to understand courtroom discussions regarding jury waiver" as a consideration. 448 F.3d at 93–94. The latter is particularly relevant here, as Shorty's low I.Q. and learning disability undoubtedly made it more difficult for him than the white-collar defendant in *Leja* to follow courtroom discussions.

Finally, that Shorty may have made a "tactical choice" to waive a jury tells us nothing about whether he understood what he would be giving up by making such a choice. It was the district court's responsibility to fully inform Shorty of the nature and import of the right he was waiving, no matter his (or his counsel's) reason for waiving it. In failing to do so, the district court did not meet its "serious and weighty responsibility" of ensuring that Shorty knew what that right meant and understood the consequences of waiving it. *See Johnson*, 304 U.S. at 465. An invalid jury waiver is structural error and, accordingly, we reverse and remand. *See United States v. Alvarez-Moreno*, 657 F.3d 896, 898 (9th Cir. 2011) (citing *United States v. Bailon-Santana*, 429 F.3d 1258, 1261 (9th Cir. 2005)).

## III.

Shorty next contends that there was insufficient evidence to support his conviction for aiding and abetting Smallcanyon's false statements on the Form 4473 at Ruff's Sporting Goods and Shooter's World that she was the "actual buyer" of the guns. Although we reverse Shorty's conviction

on all counts for the reasons discussed above, we address the aiding and abetting question because "a challenge to the sufficiency of the evidence implicates a defendant's rights under the Double Jeopardy Clause." *United States v. Boulware*, 384 F.3d 794, 809–10 (9th Cir. 2004) (citing *United States v. Jimenez Recio*, 371 F.3d 1093, 1104 (9th Cir. 2004)). Because we hold that there was sufficient evidence to support Shorty's aiding-and-abetting convictions, the Double Jeopardy Clause is not implicated and the government may retry Shorty on all counts.**[6]**

We review a sufficiency-of-the-evidence claim de novo. *United States v. Odom*, 329 F.3d 1032, 1034 (9th Cir. 2003). There is insufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc). Shorty's sufficiency-of-the-evidence claim is narrow: he does not contest that he asked Smallcanyon to buy guns for him, that he drove her to the two stores and directed her what to buy, or that he gave her the money to buy the guns. Nor does he contend that her statements on the Form 4473s were not false, or that she did not make them; rather, he argues that because there was no evidence that he *knew* that Smallcanyon would have to lie on the forms in order to complete the purchase or that he *instructed* her to do so, he cannot be found guilty of aiding and abetting her false statements.

---

**[6]** Shorty does not challenge the sufficiency of the evidence for the three remaining counts and therefore the government may, of course, retry Shorty on those counts.

Under the aiding and abetting statute, 18 U.S.C. § 2, a person who "aids, abets, counsels, commands, induces or procures" the commission of an offense is "punishable as a principal." In this circuit, the elements necessary for an aiding and abetting conviction are:

> (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.

*United States v. Singh*, 532 F.3d 1053, 1057–58 (9th Cir. 2008) (quoting *United States v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988)). We have stated more generally that "[c]onviction as an aider and abettor requires proof the defendant willingly associated himself with the venture and participated therein as something he wished to bring about." *United States v. Lopez*, 484 F.3d 1186, 1199 (9th Cir. 2007) (en banc). There is ample evidence in the record from which a reasonable juror could have found that Shorty met these criteria: Smallcanyon testified that Shorty asked her to buy the guns on his behalf, telling her that he could not purchase them himself due to his "past with a record." When she agreed, he drove her to the gun stores, instructed her which guns to buy, and gave her the money with which to buy them. The lack of evidence that Shorty knew that Smallcanyon would have to falsely claim to be the "actual buyer" of the guns on a Form 4473 or that he instructed her to do so is not fatal to the government's case; it is enough that he

encouraged her to represent herself as the "actual buyer" and that, in order to do so, she was required to lie on the forms.

Our holding is consistent with the approach taken by the two other circuits to address this question. In *United States v. Soto*, 539 F.3d 191 (3d Cir. 2008), the Third Circuit faced a fact pattern almost identical to the one here: Soto purchased firearms using a "straw purchaser" who filled out a Form 4473 attesting that she, not Soto, was the "actual buyer" of the guns. Soto was convicted of aiding and abetting the making of the false statement and on appeal he argued that the evidence was insufficient to support his conviction because he was "unaware" that the Form 4473 required that the purchaser state whether she was the actual buyer, and therefore that she would have to lie. *Id.* at 194. The Third Circuit rejected this argument, describing Soto's extensive involvement in the purchase:

> [T]he evidence produced at trial revealed that Soto escorted Brown to Delia's gun shop on several occasions. He was present in the store with her at the time of these purchases and actively involved himself in the purchase of the firearms. . . . He knew that the guns were not for her, and that they were going to be resold to drug dealers. In this case, Soto was more than merely a knowing spectator. He was actively involved in the gun purchase process and participated in the criminal enterprise. He actively involved himself in the straw purchase and knew that Brown was a straw purchaser.

*Id.* at 195. The court then likened these facts to those in *United States v. Abfalter*, 340 F.3d 646 (8th Cir. 2003), where the Eighth Circuit rejected the same argument raised by Soto (and Shorty here):

> The circumstances of Williams' conviction in *Abfalter*, and Soto's conviction in this case, are quite similar. In both cases, the alleged aider and abetter was intimately involved in the firearms purchases. Both Williams and Soto were present at the time of the firearms purchases, and the evidence indicated that both Williams and Soto had a history with their straw purchaser. . . .
>
> Viewing this evidence in the light most favorable to the government, we find that this evidence was legally sufficient to support the conviction because there existed a logical and convincing [connection] between the facts established and the conclusion inferred that Soto aided and abetted [the purchaser] in [making the false statement].

539 F.3d at 195–96 (emphasis added); *see also Abfalter*, 340 F.3d at 654–55. Like the defendants in *Soto* and *Abfalter*, Shorty was "intimately involved" in the firearm purchases. Shorty accompanied Smallcanyon to the gun stores, told her which guns to buy, and gave her the money with which to buy them. This evidence is sufficient to support Shorty's convictions for aiding and abetting the false statements Smallcanyon made in order to complete the purchase— statements consistent with the task Shorty gave her of representing herself as the actual buyer.

## CONCLUSION

A district court has a serious and weighty responsibility to safeguard a defendant's constitutional right to a jury trial by ensuring that a waiver of that right is made knowingly and intelligently. This responsibility becomes especially critical where there is evidence that the defendant suffers from a low I.Q. or a learning disability and there is no written waiver. In these circumstances, at least, a court must conduct an in-depth colloquy with the defendant designed to ensure that he understands the import and effect of the right he is waiving. Because the district court failed to do so here, we reverse and remand.

**REVERSED and REMANDED.**