UNITED STATES of America,
Plaintiff–Appellee,

v.

Lamon Lee CHRISTENSEN,
Defendant–Appellant.

No. 89–50513.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1993.

Decided March 17, 1994.

Amended April 4, 1994.

Mary Gibbons, North Hollywood, CA, for defendant-appellant.

Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, PREGERSON and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Lamon Lee Christensen appeals his convictions for armed bank robbery, 18 U.S.C. § 2113(d), and use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1). He

argues that the evidence was insufficient to support his firearm conviction, and that the district court erred in accepting his jury trial waiver, in denying his late request to file a notice of intent to raise an insanity defense, and in failing to depart downward based on his mental illness.

We have jurisdiction to hear Christensen's timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We reverse and remand.

## FACTS

On December 22, 1987 in Pomona, California, the Great Western Bank received an armored car delivery of $321,000 in cash. Geno Smith, a teller, testified that shortly after the delivery, two men approached his station. After what appeared to be some disagreement between them, the older of the two came forward to transact his business. The other man, who turned out to be the robber, waited his turn.

When the older man left the counter, the robber moved behind the teller's counter and produced a gun. Putting the gun to Smith's right side, he pushed him back toward the vault. They encountered other tellers at the entrance to the vault. The robber told them to move; when they did not, he put the gun to Smith's head and said he would shoot. The tellers moved aside, and the two men entered the vault. The robber told Smith to put the recently delivered bags of money into a briefcase he had brought. However, either the case could not be opened, or the bags would not fit inside it.[1] The robber then pushed Smith aside, grabbed the case and the money bags, "dangled" his gun in one hand, and walked out of the vault.

Lamon Lee Christensen was identified as the robber and indicted on August 19, 1988 for armed bank robbery, 18 U.S.C. § 2113(d), and using a firearm during a crime of violence, 18 U.S.C. § 924(c)(1). Five days before trial was to begin, he sought a continuance so that a psychiatrist could evaluate his

competency to stand trial and to advise him on the possibility of raising an insanity defense. Trial was continued until December 6, 1988.[2]

Christensen signed and filed a written waiver of jury trial. At the beginning of trial the court conducted the following exchange with him:

COURT: Mr. Christensen, I have just been handed the waiver of trial by jury which you appeared to have signed. Did you sign the waiver?

DEFENDANT: Yes, I did.

COURT: You understand that you waive the right to trial by jury and a trial in which 12 jurors have to find you guilty. You also have the right to waive or give up that right.

DEFENDANT: Yes, I understand that.

COURT: And have you waived jury trial and agreed to trial just by the Court?

DEFENDANT: Yes, your Honor.

COURT: All right.

This was the only discussion between the Court and Christensen with regard to the jury waiver issue. The judge accepted the waiver and Christensen's case was tried to the court.

The district court found Christensen guilty of armed robbery, but requested further briefing on whether Smith and Williams' eyewitness testimony was sufficient to prove the firearm charge.

After the trial, Christensen requested a substitution of counsel, due to alleged dissatisfaction and difficulties in communication with the Public Defender who represented him at trial. The court granted the request and appointed new counsel. Five weeks later, on March 6, 1989, his new attorney filed an unopposed motion for a new trial, or alternatively to reopen the defense in order to present additional alibi and identification witnesses. The court allowed him to reopen

---

1. On this point Smith's testimony is in conflict with that of Barbara Williams, another bank employee.

2. On November 8, Christensen sought and received a further continuance until January 10, 1989. Christensen received a third continuance until January 17, 1989, on which date the trial actually started.

his defense, and continued the matter until May 19, 1989.

On May 19, however, Christensen abandoned his plans to present additional witnesses, and instead moved for a continuance in order for a new psychiatrist to examine him with an eye to an insanity defense.[3] He submitted on his behalf a declaration by a psychiatrist, Dr. Slawson, who had not examined him but who said that manic-depressive disorder, which Christensen alleged he had, could become so severe as to make it impossible for a person to tell right from wrong. The government opposed this motion.

On June 5, 1989, after hearing argument on the issue, the district court denied Christensen's request for leave to file an insanity defense. The parties then briefed the use of a firearm charge which the court had reserved, and on August 17, 1989, the court found Christensen guilty of that crime.

Christensen was sentenced on September 11, 1989. At the sentencing hearing, Dr. Slawson testified that based on his examination, Christensen suffered from bipolar disorder, a condition which could result in uncontrollable mood swings during which a person might not be able to appreciate the wrongfulness of his or her own behavior. Christensen offered this testimony in support of his request for a downward departure from the Guidelines. The request was based on U.S.S.G. § 5K2.13, which provides for a downward departure where defendant demonstrates "diminished capacity," provided the conviction is for a nonviolent offense and defendant's criminal history does not indicate a need for incarceration to protect the public. The request was also based on the introductory policy statement on "departures" in the Guidelines, which states that

> the court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (e.g., as

an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

U.S.S.G. § 5K2.0.

While expressing frustration that the Guidelines forced a disproportionately long sentence in this case, the court held that as a matter of law it did not have authority to depart downward. Christensen was sentenced as a career offender to 262 months for armed robbery, and to a consecutive five-year term for the use of a firearm.

## DISCUSSION

■ Christensen argues that the district court's failure to question him more fully with regard to his written waiver of a jury trial was reversible error. The adequacy of a jury trial waiver is a mixed question of fact and law which this court reviews de novo. *United States v. Ferreira–Alameda*, 815 F.2d 1251, 1252 (9th Cir.1987).

■ Criminal defendants may waive their constitutional right to a jury trial if the waiver is made in writing and has the approval of the government and of the court. Fed. R.Crim.P. 23(a). Furthermore, the defendant must be competent to waive the jury right, and the waiver must in fact be voluntary, knowing, and intelligent. *Patton v. United States*, 281 U.S. 276, 312–13, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); *United States v. Cochran*, 770 F.2d 850, 851 (9th Cir.1985); *see Godinez v. Moran*, —— U.S. ——, ——, 113 S.Ct. 2680, 2687, 125 L.Ed.2d.321 (1993) (requirements for waiver of constitutional rights generally).

In *Cochran*, we affirmed the district court's acceptance of Cochran's waiver of jury trial after a colloquy slightly less extensive than the one here.[4] Cochran argued on

---

**3.** Christensen's previous attorney had arranged for him to be examined by a Dr. Coburn, with whose help he determined that Christensen was competent to stand trial and that an insanity defense was not "viable." Christensen's new attorney, however, asserted that Dr. Coburn's exam, which consisted of a ten-minute interview in a courthouse lockup followed by review of

Christensen's medical records, had been cursory and insufficient.

**4.** Both colloquies were very brief, and in both, the defendant's contribution consisted only of two or three "yes" answers. In Christensen's case the court did tell him that he was waiving the right to have 12 jurors, all of whom must find

appeal that the district court should have been required to conduct a more detailed inquiry into his waiver, in order to clearly establish that it was voluntarily and intelligently made. We disagreed: "the failure of a district court to conduct such an interrogation does not violate either the Constitution ... or Fed.R.Crim.P. 23(a); nor does it *ipso facto* require reversal." *Id.* Finding that there were "no additional facts in the record bearing upon the question whether the waiver was voluntary, knowing, and intelligent," we affirmed Cochran's conviction. *Id.*

In rather lengthy dicta, however, the *Cochran* court took great pains to warn that while it is not a constitutional or statutory requirement,[5] the better practice is for courts to conduct a colloquy with the defendant in order to make sure the jury waiver is voluntary and intelligent. *Id.* at 852–53; *see also* 2 Wright, *Federal Practice & Procedure*, § 372 ("It clearly is the better practice for the court to interrogate the defendant personally ... to be sure the defendant understands his right to trial by jury and the consequences of a waiver"). The court opined that "adoption of a supervisory rule will be unnecessary," but nonetheless "implore[d]" district courts to inform defendants about the nature of the right they are waiving. Specifically, it noted that the defendant should be told that:

(1) twelve members of the community compose a jury; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial.

*Id.* at 853; *see also United States v. Martin,* 704 F.2d 267, 274–75 (6th Cir.1983) (also refusing to adopt supervisory rule; also imp-

loring district courts to inform defendants of same four facts listed above).[6]

In addition to calling attention to the forceful dicta in *Cochran,* Christensen points to substantial factual differences which make the lack of a full colloquy in his case even more troubling than in *Cochran.* Whereas the record in *Cochran* was devoid of facts (other than the uninformative colloquy) bearing on whether Cochran's waiver was knowing and intelligent, here we are presented with the salient fact of Christensen's manic-depressive disorder. Christensen contends that the court was on notice that his waiver might be less than knowing and intelligent because the court had already granted him several continuances so that a psychiatrist could examine him for competency to stand trial and for a possible insanity defense.[7]

Christensen argues that in cases where the defendant's cognitive or emotional condition has been called into question, the usual presumption that a waiver executed pursuant to Rule 23 is knowing, voluntary, and intelligent, *see Cochran,* 770 F.2d at 851, should not operate. In such cases, he argues, the defendant's jury waiver should not be accepted without a more extensive colloquy than was conducted in his case. He thus asks us to hold that the district court erred as a matter of law in not conducting a fuller colloquy.

Christensen's argument is persuasive. In cases where the defendant's mental or emotional state is a substantial issue, "imploring" district courts to conduct fuller colloquies, *id.* at 853; *Martin,* 704 F.2d at 274, is not enough. We must require them to do so. Christensen rightly points out that *Cochran* does everything but require such colloquies: "there is ... every reason for district courts to conduct a colloquy ... and no apparent

---

him guilty; the court in *Cochran* did not make this statement.

**5.** *But see United States v. Scott,* 583 F.2d 362, 364 (7th Cir.1978) (requiring district courts to conduct interrogation before accepting jury waiver).

**6.** In addition to pointed statements from the appeals courts, district court judges have similar advice at their elbows in the *Bench Book for United States District Court Judges* §§ 1.12–3, 1.12–4 (1986) (suggesting, *inter alia,* that the

court inform defendant of the same four facts mentioned in *Cochran* and *Martin*).

**7.** In moving for these continuances, defense counsel told the court that Christensen suffered from manic-depressive disorder, and that during an interview he had been "despondent and unresponsive" to the point where she "was concerned that Mr. Christensen might not be competent to stand trial." Declaration of Harriet L. Hawkins, October 20, 1988, at 3–4.

reason for not doing so." *Cochran,* 770 F.2d at 852; *see id.* at 853 ("By asking appropriate questions the district court will also be better able to perform its task of determining whether a proposed waiver is in fact being offered voluntarily, knowingly and intelligently"). The suspected presence of mental or emotional instability eliminates any presumption that a written waiver is voluntary, knowing or intelligent.

 In *Godinez,* the Supreme Court said "a trial court must satisfy itself that [defendant's] waiver of his constitutional rights is knowing and voluntary." —— U.S. at ——, 113 S.Ct. at 2687. This is more than a competency determination: whereas competency goes to a defendant's *capacity* in general, "[t]he purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision." *Id.* at n. 12. The Court has called this inquiry a "serious and weighty responsibility." *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). We now hold that district courts may not discharge this responsibility in cases where they have reason to suspect a defendant may suffer from mental or emotional instability without an in-depth colloquy which reasonably assures the court that under the particular facts of the case, the signed waiver was voluntarily, knowingly, and intelligently made.

## CONCLUSION

 The district court's failure to conduct an adequate colloquy as to whether Christensen's waiver was voluntary, knowing, and intelligent constitutes reversible error. We therefore vacate Christensen's convictions and remand for a new trial.[8]

8. Because we remand for a new trial, we need not address Christensen's other claims. Since it may be relevant if this case again reaches the sentencing stage, however, we note that the district court incorrectly concluded it was without authority to consider whether Christensen's mental illness was of such a nature that it was an "extraordinary" circumstance warranting a downward departure. *See United States v. Roe,*

REVERSED, VACATED, and REMANDED.

976 F.2d 1216, 1218 (9th Cir.1992); *United States v. Doering,* 909 F.2d 392, 394 (9th Cir. 1990); *see also United States v. Boshell,* 952 F.2d 1101, 1107 (9th Cir.1991). If the district court were to conclude that Christensen's mental illness qualified as an extraordinary case, it would be authorized to depart downward under U.S.S.G. §§ 5H1.3 and 5K2.0.