**Electronically Filed
Supreme Court
SCWC-17-0000507
17-JUN-2020
08:38 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

ERIK ERNES, Petitioner/Defendant-Appellant.

_____

SCWC-17-0000507

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000507; CASE NO. 1DCW-16-0004208)

JUNE 17, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

<u>OPINION OF THE COURT BY McKENNA, J.</u>

## I. Introduction

This case arises from Erik Ernes's ("Ernes") conviction of the offense of assault against a law enforcement officer in the second degree, in violation of Hawai'i Revised Statutes ("HRS") § 707-712.6 (2014).[1]  On October 11, 2016, Ernes fell asleep while

_____

[1]  HRS § 707-712.6 (2014) provides:

> (1)  A person commits the offense of assault against
> a law enforcement officer in the second degree
>
> (continued. . .)

riding the bus home from work.  After making several unsuccessful attempts to wake Ernes, who appeared intoxicated, representatives of the bus company called the Honolulu Police Department ("HPD") to request assistance.  An HPD officer responded to the scene and succeeded in waking Ernes through sternum rubs.  Apparently startled, Ernes then punched the HPD officer in the face with his fist.  He was arrested, charged, and convicted after a bench trial.[2]  The Intermediate Court of Appeals ("ICA") affirmed Ernes's conviction in a summary disposition order ("SDO").  State v. Ernes, CAAP-17-0000507, 2019 WL 2929017 (Haw. App. July 8, 2019).

Ernes presents the following question on certiorari:

> Whether the ICA gravely erred in finding that the District Court did not reversibly err in failing to obtain a valid on-the-record waiver of Ernes' constitutional right to a jury trial.

We hold that under the totality of the circumstances, taking into account the defendant's language barrier and the

---

(continued. . .)
>> if the person recklessly causes bodily injury to a law enforcement officer who is engaged in the performance of duty.
>
> (2) Assault of a law enforcement officer in the second degree is a misdemeanor.  The court shall sentence the person who has been convicted of this offense to a definite term of imprisonment, pursuant to section 706-663, of not less than thirty days without possibility of probation or suspension of sentence.

[2]   The Honorable Paula Devens presided. Ernes was sentenced to the mandatory 30 days of imprisonment, see supra note 1, and his sentence was stayed pending appeal.

lack of information regarding defendant's background and experience, State v. Gomez-Lobato, 130 Hawai'i 465, 472, 312 P.3d 897, 904 (2013), the record does not reflect an on-the-record exchange sufficient to constitute the true colloquy required to establish a knowing and intelligent waiver of Ernes's constitutional right to a jury trial. State v. Baker, 132 Hawai'i 1, 6, 319 P.3d 1009, 1014 (2014).

## II. Background

## A. District court proceedings

On February 15, 2017, the district court[3] held a hearing to determine whether Ernes would demand a jury trial or whether he would waive that right. Ernes was provided with a court-appointed Chuukese interpreter. Defense counsel opened by stating, "Your Honor, at this time, my client will be waiving his right to jury trial, will be pleading not guilty, [and will be] asking for . . . a Chuukese interpreter for trial." The district court then addressed Ernes as follows:[4]

> Court:     Okay, good morning, Mr. Ernes.
>
> Ernes:     (In English)  Good morning.

---

[3]     The Honorable Lono J. Lee presided.

[4]     In the transcript for this hearing, when Ernes responded to the district court directly, without the interpreter's assistance, the court reporter specifically indicated in the transcript that Ernes spoke "(In English)." When Ernes responded to the district court in Chuukese, requiring the interpreter's assistance, the court reporter specifically indicated that Ernes spoke "(Through the interpreter)."

Court:      I just received a waiver of jury trial
            form.[5]  Did you sign it?

Ernes:      (Through the interpreter)  Yes.

Court:      Okay.  Did you review it with your
            attorney?

Ernes:      (Through the interpreter)  Yes.

Court:      Okay.  Did she explain to you what a jury
            trial is?

Ernes:      (In English)  Yes.

Court:      Okay.  For the record, a jury trial is
            where you have an opportunity to help
            select 12 people from the community.  The
            State needs to prove its case beyond a
            reasonable doubt to all 12 jurors, and
            all 12 jurors must agree before you can
            be found guilty.  Is that your
            understanding?

Ernes:      (Through the interpreter)  Yes.

Court:      Yes.  Okay.  Is your mind clear today?

Ernes:      (In English)  Yes.

Court:      Okay, how much education do you have?
            High school?  College?

Ernes:      (In English)  No, just have high school.

Court:      High school?  Okay.  Do you understand
            your right to a jury trial?

Ernes:      (Through the interpreter)  Yes.

Court:      Yes.  Is anyone forcing you to give up
            this right?

Ernes:      (In English)  No.

---

[5]     Because Ernes's waiver of jury trial form was omitted from the record on appeal, the ICA entered an order directing the district court clerk to file a supplemental record on appeal including the form.  However, the clerk was unable to locate the form.  The parties therefore stipulated to, inter alia, the following facts:  Ernes executed a waiver of jury trial form, affixing his signature on the form after a paragraph stating, "I hereby waive and give up my right to be tried by a jury and agree that my case may be tried by a single judge."  The district court received the form and filed it in open court.

> Court:     All right, thank you.  Court will find
>            defendant knowing, voluntary,
>            (indiscernible) right to jury trial,
>            enter a not guilty plea, request Chuukese
>            interpreter next proceeding.

The district court accepted Ernes's jury trial waiver and not guilty plea.  Ernes was convicted after a bench trial.[6]

**B.   ICA proceedings**

Ernes appealed his conviction to the ICA.  With respect to the jury trial waiver issue,[7] the ICA concluded that Ernes failed to carry his burden to demonstrate that his jury trial waiver was involuntary.  Ernes, SDO at 2.  The ICA reasoned:

> Ernes does not dispute that he signed a Waiver of Jury Trial form that waived his right to a jury trial.  Ernes admits that the District Court thereafter inquired whether Ernes reviewed the waiver form, whether his attorney reviewed the form with him, whether his attorney explained the concept of a jury trial, whether he understood that a jury trial is an opportunity to help select twelve people from the community, and whether he understood that the State was required to prove its case beyond a reasonable doubt to all twelve jurors, and all twelve jurors must agree before he can be found guilty.  Ernes answered in the affirmative to all of those inquiries.  Therefore, it appears from the record that Ernes voluntarily waived his right to a jury trial and, thus, he has the burden to demonstrate by a preponderance of the evidence that his waiver was involuntary.

---

[6]     Ernes was sentenced to the mandatory 30 days of imprisonment, see supra note 2, and his sentence was stayed pending appeal.

[7]     Ernes raised two additional points of error before the ICA: (1) the State failed to present sufficient evidence that he acted recklessly; and (2) the State did not prove beyond a reasonable doubt facts negating self-defense.  The ICA resolved these points of error by concluding that, "[w]hen the evidence adduced at trial is considered in the strongest light for the prosecution, . . . there was sufficient evidence to convict Ernes of Assault Against a Law Enforcement Officer in the Second Degree."  Ernes, SDO at 4.

Ernes, SDO at 2-3 (internal quotation marks, brackets, and ellipsis omitted).

The ICA cited to State v. Macaso, No. CAAP-15-0000198, 2016 WL 2941071 (Haw. App. Apr. 13, 2016), for the proposition that "stopping and addressing Ernes after stating each component of a jury trial" was not required for the district court to obtain a valid waiver of his right to a jury trial. Ernes, SDO at 3. The ICA also determined that Ernes "failed to point to any specific facts to support his claim that the colloquy conducted [by the district court] was insufficient." Id. It therefore concluded that Ernes knowingly, intelligently, and voluntarily waived his right to a jury trial. Id.

C.   **Certiorari application**

On certiorari, Ernes contends that the ICA misconstrued his argument on appeal:

> The ICA contended that Petitioner argued that the court was required to present the concept of the jury trial into "segments[,"] pausing after each "right[.]"  . . .  [T]he ICA noted its determination in [Macaso] that "stopping after each right of the Tachibana advisement to determine whether the defendant understands that right is not a per se requirement for an adequate Tachibana colloquy."
>
> That is not the point in this case.  Petitioner is not arguing for a per se requirement in the taking of an oral jury waiver, even after a written waiver has been signed. Rather, Petitioner is advocating the required colloquy actually be . . . what it was intended to be, i.e., a conversation between a defendant and the court [that] allows the court to determine that the defendant has an actual understanding of the rights that the defendant is waiving.

6

Ernes further argues on certiorari that the district court's colloquy was defective because it failed to engage him in a verbal exchange in which it ascertained his understanding of the proceedings and his rights, citing to State v. Celestine, 142 Hawai'i 165, 170, 415 P.3d 907, 912 (2018), and State v. Pomroy, 132 Hawai'i 85, 93, 319 P.3d 1093, 1101 (2014).  He maintains that the district court's "single compound question" and his one-word answers did not constitute a true colloquy, but rather was in the nature of an advisement.  In addition, Ernes asserts that "[it] is revealing that [although he] answered some questions in English, [he] had to answer the single jury trial rights question through the interpreter."  He further argues that the district court did not properly consider the fact that he required the assistance of an interpreter.  Ernes also contends the district court failed to "ask any questions to elicit whether [he] had any limitations [that] might influence his comprehension of the compound question regarding his jury trial rights."  Ernes concludes that the jury trial waiver was invalid because the district court failed to engage him in "any exchange to ascertain whether [the] waiver of his jury trial right was based on his understanding of [that] right[.]"

### III.  Standard of review

> The validity of a criminal defendant's waiver of [the] right to a jury trial presents a question of state and federal constitutional law. . . .  We answer questions of constitutional law by exercising our own independent

> constitutional judgment based on the facts of the case.
> Thus, we review questions of constitutional law under the
> right/wrong standard.

Gomez-Lobato, 130 Hawai'i at 468-69, 312 P.3d at 900-01 (citation omitted).

### IV.  Discussion

When a criminal defendant has the right to a jury trial, the trial court is required to "inform the defendant of the right to jury trial in the circuit court[,] and that the defendant may elect to be tried without a jury in the district court."  Hawai'i Rules of Penal Procedure ("HRPP") Rule 5(b)(1) (2014).  This serves several purposes: "(1) it more effectively insures voluntary, knowing, and intelligent waivers[;] (2) it promotes judicial economy by avoiding challenges to the validity of waivers on appeal[;] and (3) it emphasizes to the defendant the seriousness of the decision[.]"  State v. Friedman, 93 Hawai'i 63, 68, 996 P.2d 268, 273 (2000) (quoting United States v. Cochran, 770 F.2d 850, 851-52 (9th Cir. 1985)).

A defendant may waive the right to trial by jury either orally or in writing, provided that such waiver is knowing and voluntary, and comes directly from the defendant.  State v. Ibuos, 75 Hawai'i 118, 121, 857 P.2d 576, 578 (1993).  But, even where the defendant executes a written waiver form, "the court should also engage in an oral colloquy with the defendant to establish that the waiver was knowing, intelligent, and

voluntary."  Gomez-Lobato, 130 Hawai'i at 469, 312 P.3d at 901.
The validity of a defendant's waiver of the right to a jury
trial is reviewed "under the totality of the circumstances
surrounding the case, taking into account the defendant's
background, experience, and conduct."  Friedman, 93 Hawai'i at
70, 996 P.2d at 275 (citation omitted).  As set forth below,
under the totality of the circumstances surrounding the case,
the district court's colloquy was insufficient in establishing a
valid waiver of Ernes's right to a jury trial.

Our analysis of the validity of Ernes's jury trial waiver
is guided by Gomez-Lobato, 130 Hawai'i 465, 312 P.3d 897;
Friedman, 93 Hawai'i 63, 996 P.2d 268; State v. Han, 130 Hawai'i
83, 306 P.3d 128 (2013); and United States v. Duarte-Higareda,
113 F.3d 1000 (9th Cir. 1997).

The defendant in Duarte-Higareda did not speak English, yet
he executed a jury trial waiver form written entirely in
English.  Duarte-Higareda, 113 F.3d at 1002.  At a pretrial
hearing, defense counsel stated, "The defendant and I have had
an opportunity to discuss the matter.  We would waive a jury.  I
believe it's beneficial to him to do that, after he and I
discussed it on two occasions."  Id.  Although a Spanish
language interpreter was present to assist the defendant, the

record did not reflect whether the form was sight-translated[8] into Spanish for the defendant. Id. Before trial, the district court asked defense counsel, "Is this still a court trial?" and defense counsel responded, "Yes, your Honor." Id. The district court proceeded to trial without questioning Duarte-Higareda about the waiver form or his understanding of the right to a jury trial. Id.

The Ninth Circuit discussed the following guidelines set forth for determining whether a defendant's jury trial waiver is valid:

> The district court should inform the defendant that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. Furthermore, the district court should question the defendant to ascertain whether the defendant understands the benefits and burdens of a jury trial and freely chooses to waive a jury trial.

Id. (citations omitted). Although the Ninth Circuit acknowledged that a colloquy informing the defendant of the four primary components of a jury trial is not required in every case, it noted that, "where the record indicates a special

---

[8]    "Sight-translation" involves the oral translation of a document. Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573-74 (2012). Thus, "sight-translation" in this context would have involved the interpreter orally translating the English language jury trial waiver form into Spanish for Duarte-Higareda. Without a sight-translation, a person with limited English proficiency would not understand the document to which a signature is affixed. Although defense counsel may have followed our guidance in Gomez-Lobato that "where a defendant needs the assistance of an interpreter, defense counsel is obligated to explain any waiver of the defendant's constitutional rights through an interpreter[,]" 130 Hawai'i at 472 n.8, 312 P.3d at 904 n.8 (emphasis omitted), it is incumbent on the court to confirm that fact in the colloquy.

disadvantage or disability bearing upon the defendant's understanding of the jury waiver, the district court must conduct a colloquy with the defendant to ensure that the waiver is voluntary, knowing, and intelligent."  113 F.3d at 1003 (citing United States v. Christensen, 18 F.3d 822, 825 (9th Cir. 1994)).  The Ninth Circuit explained:

> Duarte[-Higareda's] language barrier . . . is a "salient fact" that was known to the district court and put the court on notice that [his] waiver "might be less than knowing and intelligent," [Christensen,] 18 F.3d at 825. Under these circumstances, the district court was obliged to conduct a colloquy with Duarte[-Higareda] to carry out its "serious and weighty responsibility" of ensuring that a defendant's jury waiver is voluntary, knowing, and intelligent.  By failing to address Duarte[-Higareda] at all, the district court failed to discharge this responsibility.

Id. (citation omitted).

Similarly, the defendant in Gomez-Lobato executed a written jury trial waiver form in English despite not being fluent in English.  130 Hawai'i at 466, 312 P.3d at 898.  During a pre-trial hearing, in which the defendant had the assistance of a court-appointed interpreter, the family court questioned him regarding the waiver form as follows:

> Court:      Good morning, Mr. Gomez[-]Lobato.  I have
>             with me a waiver of jury trial form.  Are
>             these your initials, and is this your
>             signature on this form?
>
> Defendant:  Yes.
>
> Court:      Prior to placing your initials and
>             signature on this form, did you
>             understand what you were doing and
>             signing?
>
> Defendant:  Yes.

11

> Court:      And was that explained to you in Spanish?
>
> Defendant: Yes.
>
> Court:      Did you discuss this with your attorney?
>
> Defendant: Yes.
>
> Court:      Okay.  Do you have any questions for me?
>
> Defendant: No.
>
> Court:      Okay.  The Court concludes that the defendant knowingly, voluntarily, intelligently waived his rights to a jury trial.

130 Hawai'i at 468, 312 P.3d at 899 (capitalization removed).

Although the waiver form was translated for Gomez-Lobato, and the court communicated with him through the interpreter, this court held that, under Duarte-Higareda, the language barrier between Gomez-Lobato and the family court was a "salient fact" that should have prompted the family court to ask additional questions to verify that Gomez-Lobato understood the right he was waiving.  130 Hawai'i at 471, 312 P.3d at 903.  We explained:

> [I]n light of Gomez-Lobato's language barrier, his affirmative answers to each of [the family court's] questions did not establish that he understood he was waiving his right to a jury trial.
>
> This is particularly true where, as here, the record contains little information with respect to the defendant's background, experience and conduct.  Friedman, 93 Hawai'i at 70, 966 P.2d at 275. . . .  Indeed, there is nothing in the record to indicate Gomez-Lobato's educational or employment background, or experience with the criminal justice system, that could establish that he understood his right to a jury trial.

130 Hawai'i at 472, 312 P.3d at 904 (footnote omitted).

Although we recognized that "courts are best situated to determine what questions need to be asked of individual defendants," we determined that, under <u>Duarte-Higareda</u>, the family court's questions were insufficient to ascertain that Gomez-Lobato understood his right to a jury trial. <u>Id.</u> (footnote omitted). We therefore held that the family court erred in finding Gomez-Lobato's waiver to be voluntary, knowing, and intelligent. 130 Hawai'i at 473, 312 P.3d at 906.

<u>Han</u>, which addressed a <u>Tachibana</u>[9] colloquy, is relevant to colloquy requirements when a language barrier exists. In <u>Han</u>, two advisements took place regarding the defendant's right to testify, one before trial began, and one at the close of the defendant's case, as required by <u>Tachibana</u>. 130 Hawai'i at 85-86, 306 P.3d at 131-32. A Korean language interpreter was sworn in to interpret both. 130 Hawai'i at 85, 306 P.3d at 131. The <u>Tachibana</u> colloquy given at the close of the case was as follows:

> Court:    Oh, okay. All right. And so let me take this opportunity, then, to question your client again and -- before we bring in our jury. All right, [Petitioner], good morning. Your attorney just informed the court that you are not going to testify on your behalf.

---

[9]    <u>Tachibana v. State</u>, 79 Hawai'i 226, 900 P.2d 1293 (1995), holding that trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify.

> Han:            (Through the interpreter) Yes.
>
> Court:          Okay.  All right, remember in the beginning ——
>                 beginning of our trial, this  court advised you
>                 of your rights.  And that is, one, you have the
>                 right to testify on your behalf, and that ——
>                 that decision to testify —— whether to testify
>                 or not is your decision alone and that nobody
>                 can force you to testify.  And then, of course,
>                 second, you also have the constitutional right
>                 to remain silent and that if you decide to
>                 exercise your right to remain silent, the jury
>                 will be instruct —— will be instructed not to
>                 hold that against you.
>
>                     Okay.  And —— and I trust that you  have
>                 —— now that the State has finished its case and
>                 you had a chance to discuss what happened with
>                 your attorney, and based on that discussion,
>                 you have decided that you are not going to
>                 testify on your behalf.  Is anybody threatening
>                 or forcing you this morning not to testify?
>
> Han:            (Through the interpreter) No.
>
> Court:          The decision not to testify is yours and yours
>                 alone after you have discussed the  matter with
>                 your attorney.
>
> Han:            (Through the interpreter) Yes.

130 Hawaiʻi at 85-86, 306 P.3d at 130-31.

We concluded the transcript did not indicate that a true colloquy had occurred, as the court had merely advised Han of his rights without any discussion, exchange, or ascertainment that Han fully comprehended these rights.  See 130 Hawaiʻi at 89, 306 P.3d at 134.  Thus, we determined that, under the totality of the circumstances, no valid on-the-record waiver was shown:

> With respect to the Tachibana colloquy at the close of
> defendant's case, first, the court did not ask Petitioner
> for appropriate responses to ensure that Petitioner
> understood the rights articulated, and second, the risk
> that Petitioner did not understood was exacerbated by the
> fact that Petitioner needed an interpreter during the
> proceedings.  Accordingly, a review of the court's
> interactions with Petitioner with respect to the
> constitutional right to testify establishes that the court

14

> did not obtain a valid on-the-record waiver of Petitioner's
> right to testify.

130 Hawai'i at 93, 306 P.3d at 138 (footnote omitted).

Trial courts must ensure adequate protection of the constitutional rights of defendants who have limited English proficiency ("LEP").  Our cases explain that the presence of this "salient fact" underscores the importance of a court's colloquy as a procedural safeguard of the defendant's right to testify.[10]  Thus, this salient fact requires that a record show a "true colloquy" occurred, which means a discussion and exchange between the court and the defendant sufficient to establish that the defendant truly understood the rights being waived.  Hence, in the instant case, the issue is whether, "under the totality of the circumstances surrounding the case, taking into account the defendant's background, experience, and conduct," the record reflects that the district court carried out its "serious and weighty" responsibility of ensuring that Ernes's jury trial waiver was voluntary, knowing, and intelligent.  Gomez-Lobato, 130 Hawai'i at 470, 479, 312 P.3d at 902, 911.

To repeat, this was the entirety of Ernes's jury trial waiver colloquy:

> Court:      Okay, good morning, Mr. Ernes.
>
> Ernes:      (In English)  Good morning.

---

[10]   The requirement of a true colloquy is not limited to situations in which the "salient fact" is a language barrier.  We have also recognized mental illness as a "salient fact."  Han, 130 Hawai'i at 92, 306 P.3d at 137.

Court:      I just received a waiver of jury trial form.  Did you sign it?

Ernes:     (Through the interpreter)  Yes.

Court:      Okay.  Did you review it with your attorney?

Ernes:     (Through the interpreter)  Yes.

Court:      Okay.  Did she explain to you what a jury trial is?

Ernes:     (In English)  Yes.

Court:      Okay.  For the record, a jury trial is where you have an opportunity to help select 12 people from the community.  The State needs to prove its case beyond a reasonable doubt to all 12 jurors, and all 12 jurors must agree before you can be found guilty.  Is that your understanding?

Ernes:     (Through the interpreter)  Yes.

Court:      Yes.  Okay.  Is your mind clear today?

Ernes:     (In English)  Yes.

Court:      Okay, how much education do you have?  High school?  College?

Ernes:     (In English)  No, just have high school.

Court:      High school?  Okay.  Do you understand your right to a jury trial?

Ernes:     (Through the interpreter)  Yes.

Court:      Yes.  Is anyone forcing you to give up this right?

Ernes:     (In English)  No.

Court:      All right, thank you.  Court will find defendant knowing, voluntary, (indiscernible) right to jury trial, enter a not guilty plea, request Chuukese interpreter next proceeding.

First, like the defendants in Duarte-Higareda and Gomez-Lobato, Ernes executed a written jury trial waiver form.  While

16

Ernes indicated that he reviewed the form with counsel, the record does not indicate that the form was sight-translated into Chuukese for him.

Second, as in Duarte-Higareda, Gomez-Lobato, and Han, Ernes's language barrier was a "salient fact" known to the court. Even where a defendant executes a written waiver form, "the court should also engage in an oral colloquy with the defendant to establish that the waiver was knowing, intelligent, and voluntary." Gomez-Lobato, 130 Hawai'i at 469, 312 P.3d at 901 (citations omitted). The language barrier elevated the district court's obligation to "conduct a colloquy . . . to carry out its 'serious and weighty responsibility' of ensuring that [his] jury waiver is voluntary, knowing, and intelligent." Duarte-Higareda, 113 F.3d at 1003; Gomez-Lobato, 130 Hawai'i at 471, 312 P.3d at 903; Han, 130 Hawai'i at 92, 306 P.3d at 137.

Third, the exchange between the court and the defendant must be a "true colloquy," which is discussion and exchange between the trial court and the defendant sufficient for an ascertainment based on the record that the defendant fully comprehended the constitutional rights being waived. Han, 130 Hawai'i at 90, 306 P.3d at 135. When a language barrier is involved, such a discussion and exchange is required to fulfill a court's responsibility.

Applying these general principles to this case, other than confirming that Ernes had signed the jury trial waiver form, this was the entirety of the colloquy regarding Ernes's understanding of his right to a trial by jury:

> For the record, a jury trial is where you have an opportunity to help select 12 people from the community. The State needs to prove its case beyond a reasonable doubt to all 12 jurors, and all 12 jurors must agree before you can be found to be guilty.  Is that your understanding?

As indicated by the district court's prefatory statement, the "exchange" with Ernes was an advisement "for the record," not a true colloquy, and was a confusing advisement at that.  The district court stated that "a jury trial is where [Ernes has] an opportunity to help select 12 people from the community."  Although the district court went on to state that "[t]he State needs to prove its case beyond a reasonable doubt to all 12 jurors, and all 12 jurors must agree before you can be found guilty.  Is that your understanding?," conflating jury selection with a jury trial was confusing.[11]

The district court also did not advise Ernes on the fourth Duarte-Higareda aspect of a jury trial -- that "the court alone decides guilt or innocence if the defendant waives a jury trial."  Duarte-Higareda, 113 F.3d at 1002.  Although a jury trial waiver may be valid despite a trial court's failure to

---

[11]    Thus, we disagree the dissent that the district court's advisement was a "succinct and clear explanation of what a jury trial entails."

inform a defendant of certain aspects of the right, the presence of a "salient fact" triggers a trial court's obligation to conduct a more comprehensive colloquy that ascertains a defendant's understanding of the right they are waiving. See Friedman, 93 Hawai'i at 70, 996 P.2d at 275.

Most countries, including the Federated States of Micronesia ("the FSM"), do not have jury trials. And most countries in the world have civil law traditions, as compared to our country as well as forty-nine of its states, including Hawai'i, which are based on common law traditions.[12] In the United States, jury-waived bench trials almost always involve one judge, who becomes the sole decisionmaker. In civil law countries, however, although the number may vary by country, trial courts usually sit on panels of three judges. See U.S. Dep't of Justice Nat'l Sec. Div., International Legal Systems -- An Introduction 8.[13] Thus, when a language barrier exists, this difference between a jury and bench trial is extremely important, and a trial court should ensure a defendant understands the difference.[14]

---

[12] Louisiana law is based on a civil law tradition.

[13] Available at https://www.justice.gov/archives/nsd-ovt/page/file/934636/download, also available at https://perma.cc/6TEC-R5YT.

[14] The dissent believes we assume Ernes's language barrier signified a complete unfamiliarity with single-judge bench trials and points out that the FSM has one judge bench trials. However, the record does not indicate Ernes

(continued. . .)

The lack of information on the record regarding Ernes's background and experience contributes to the insufficiency of the record to establish a valid waiver based on a totality of circumstances.  The "colloquy" does not reflect any information regarding Ernes's background, including his age, employment, how long he had been in the United States, whether he had received any schooling in the United States, or whether he had any familiarity or experience with jury trials.  The district court did ask Ernes whether his mind was clear and questioned him about his educational background.  Cf. Gomez-Lobato, 130 Hawai'i at 472, 312 P.3d at 904 (noting that nothing in the record indicated that Gomez-Lobato's educational background could establish that he understood his right to a jury trial).  When probed about his educational background, however, Ernes responded, "No, just have high school."  Although the dissent asserts that Ernes therefore "had a high school education," "just have high school" does not indicate whether Ernes had graduated from high school and if he had attended high school in the United States.

The educational attainment of a defendant is obviously not controlling; a person with some high school could be quite

---

(continued. . .)
had any experience with trials in the FSM; thus, the record does not indicate his understanding that if he waived his right to a jury trial, his case would be decided by one judge.  In addition, it cannot be assumed that an LEP person lived their entire life in the country of their native language.

20

familiar with the jury trial process.  The educational level of a defendant can, however, be part of the information base that might indicate a further inquiry is in order:

> Thus, [State v.] Dickson[, 4 Haw. App. 614, 673 P.2d 1036 (1983) (holding that the record must indicate a defendant's voluntary, knowing, and intelligent waiver of counsel)] indicates that a "trial court should first examine" the facts and circumstances particular to the defendant that will assist the court in assessing the defendant's level of comprehension. [4 Haw. App. at 619, 673 P.2d at 1041.]  Once this initial inquiry is complete, the trial court may tailor its colloquy with the defendant to ensure that the court adequately conveys the risks and disadvantages of self-representation in a manner that the defendant will be able to understand.  While courts are not required to strictly adhere to Dickson's analytical framework [for a waiver of counsel], it provides an important tool to ensure waivers are made knowingly and intelligently in addition to establishing a complete record for appellate review.

State v. Phua, 135 Hawai'i 504, 513, 353 P.3d 1046, 1055 (2015) (emphases added).

The dissent recognizes that a language barrier is a salient fact that necessitates a colloquy.  It asserts, however, that "Gomez-Lobato gave trial courts two examples of colloquies that would be sufficient:  (1) ask questions to 'expressly confirm' Ernes understood 'that he had a right to trial by jury and that he was waiving that right,' or (2) ask Ernes open-ended questions requiring more than a yes or no answer.  130 Hawai'i at 472, 312 P.3d at 904."  In this case, the only response Ernes gave that was not "yes" or "no" was "just have high school."  We disagree, however, that Gomez-Lobato gave a trial court such a formulaic "choice."  That case required that, for a challenged

waiver to be affirmed, the record contain a colloquy sufficient to show that a defendant truly understood the right he was waiving.

In Gomez-Lobato, this court therefore actually provided examples of additional steps that "[a trial] court should take . . . to ensure the defendant understands the right that [they are] waiving," where "a language barrier indicates that [the] defendant's written waiver executed outside the presence of the judge 'might be less than knowing and intelligent[.]'" Gomez-Lobato, 130 Hawai'i at 472, 312 P.3d at 904.  In other words, the dissent actually omits a critical part of the passage from Gomez-Lobato:

> For example, in the instant case, the court did not expressly confirm with Gomez-Lobato that he understood that he had a right to trial by jury and that he was waiving that right.  The court could have asked those questions, or, as Gomez-Lobato suggests, the court could have asked Gomez-Lobato what the document he signed meant to him, which would have required more than a yes or no answer and would have allowed the court to assess whether Gomez-Lobato truly understood the right he was waiving.

Id. (emphasis added).

Thus, in effect, the dissent now seeks to limit Gomez-Lobato, which did not create a formulaic approach to whether a valid waiver was established on the record; that case actually gave examples of the types of inquiries that could be made for appellate courts to be satisfied that, based on a totality of circumstances, a voluntary, knowing, and intelligent waiver had been shown.

22

As noted, Gomez-Lobato explicitly states that when a language barrier exists, active questions requiring more than "yes" or "no" responses can be helpful. Active questions are encouraged in court proceedings to ascertain whether a defendant needs a court interpreter. See this court's "Order Adopting the Policies for Interpreted Proceedings in the Courts of the State of Hawaiʻi," at 2.[15] In addition to the examples given in Gomez-Lobato, other active inquiries, such as, "Could you tell me your understanding of a jury trial?" or, "Could you tell me who will decide whether you are guilty or not guilty if I accept your waiver of jury trial?," also require more than a "yes" or "no" response from a LEP defendant. Thus, active questions can help show whether a defendant truly understands the right being waived.

By raising examples of the kinds of inquiries that could have been helpful, we do not deign to set out questions that must be asked in each case involving a LEP defendant.[16] Our case law has, however, consistently required that the record reflect a "true colloquy" establishing a voluntary, knowing, and

---

[15] Available at https://www.courts.state.hi.us/wp-content/uploads/2019/08/csli-Appendix-B.pdf, also available at https://perma.cc/5MB5-C7MZ.

[16] For example, a defendant with a language barrier could be a legal scholar from another country specializing in U.S. criminal procedure law charged with an offense while in Hawaiʻi to study U.S. jury trials.

intelligent waiver of a constitutional right based on a totality of circumstances, which must be apparent on the record on appellate review.

Thus, for an appellate court to conclude that there was a valid waiver of a defendant's constitutional right to jury trial, the record must reflect a colloquy establishing a true understanding based on a totality of circumstances of the particular case. Black's Law Dictionary defines a "colloquy" as "[a]ny formal discussion, such as an oral exchange between a judge . . . and a . . . defendant in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights." Colloquy, Black's Law Dictionary (11th ed. 2019).

The dissent would rule that, because the district court perfunctorily explained "for the record" "three things about what happens during a jury trial" and Ernes responded "yes," "no," and "just have high school" to the district court's advisements, the district court satisfied its "serious and weighty responsibility" to determine whether a knowing and intelligent waiver of Ernes's constitutional right was shown. We disagree. A court's responsibility is not satisfied with mere "for the record" recitations. The district court simply did not engage in a colloquy with Ernes sufficient to ascertain, based on the record, whether he truly understood the

24

constitutional right he was waiving.  Thus, the "for the record" recitations do not establish, based on a totality of circumstances, a knowing and intelligent waiver of Ernes's constitutional right to a jury trial.  <u>See</u> <u>U.S. v. Shorty</u>, 741 F.3d 961, 966 (9th Cir. 2013).

## V.  Conclusion

Based on the foregoing, the ICA's March 27, 2019 judgment on appeal and the district court's June 8, 2017 judgment and notice of entry of judgment are vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.

| | |
|---|---|
| Susan L. Arnett | /s/ Sabrina S. McKenna |
| for petitioner | |
| | /s/ Richard W. Pollack |
| Stephen K. Tsushima | |
| for respondent | /s/ Michael D. Wilson |

